LISA KOBIALKA (State Bar No. 191404)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
Email: lkobialka@kramerlevin.com

JONATHAN MARK WAGNER (*admitted pro hac vice*)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Email: jwagner@kramerlevin.com

TODD A. ROBERTS (State Bar No. 129722)
MARTIN D. DIOLI (State Bar No. 172775)
ROPERS MAJESKI PC
535 Middlefield Road, Suite 245
Menlo Park, CA 94025
Telephone: (650) 364-8200
Facsimile: (650) 780-1701
Email: todd.roberts@ropers.com
martin.dioli@ropers.com

*Attorneys for Defendants Centripetal Networks, Inc.,*
*Steven Rogers, and Jonathan Rogers*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ALBERT RICHARDS, | Case No. 4:24-cv-01065-HSG |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| CENTRIPETAL NETWORKS, INC.; ALSOP LOUIE MANAGEMENT LLC; ALSOP LOUIE CAPITAL 2, L.P.; ALSOP LOUIE PARTNERS 2, LLC; HOULIHAN LOKEY, INC.; OCEAN TOMO LLC; STEVEN ROGERS; JONATHAN ROGERS; PAUL BARKWORTH; GILMAN LOUIE; JOSEPH ADDIEGO; WILLIAM CROWELL; CRISTOBEL CONDE; and JOHN DOES 1-10, | Date: September 19, 2024 Time: 2:00 p.m. Ctrm.: Courtroom 2, 4th Floor Before: Hon. Haywood S. Gilliam, Jr |
| Defendants. | |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF THE ISSUES ....................................................................... 2

III. STATEMENT OF FACTS .................................................................................. 2

IV.  ARGUMENT........................................................................................................ 5

    A.   Mr. Richards Does Not Properly State a Claim Under Sections 10(b) or 14(e) (Counts Three and Four)............................................................................... 5

        1.   The Complaint is a "Puzzle Pleading" that Does Not Properly Plead Falsity........ 6

            a.   Houlihan Valuation ...........................................................7

            b.   Ocean Tomo Fairness Opinion...........................................8

            c.   Alleged Breach of Fiduciary Duty .....................................8

        2.   The Complaint Does Not Properly Plead Reliance................................... 9

        3.   The Complaint Does Not Properly Plead Loss Causation and Damages ............. 10

        4.   Mr. Richards' Claims are Otherwise Barred By the United States Supreme Court's Holding in *Santa Fe v. Green* ........................................... 13

    B.   Were the Court to Exercise Supplemental Jurisdiction, Mr. Richards' State Law Claims Should Be Dismissed........................................................................ 14

        1.   Mr. Richards' State Claims Premised on Fraud Should be Dismissed (Counts Five Through Nine, Eleven through Thirteen)........................................ 14

        2.   Mr. Richards Does Not Properly Plead Unjust Enrichment (Count Ten)............. 15

        3.   Mr. Richards Does Not State a Claim for Violation of California Business and Professions Code Section 17200 (Count Fourteen) ....................................... 16

        4.   Mr. Richards Does Not State a Claim for Violation of Any Delaware Statute (Count Fifteen)................................................................................... 16

    C.   The Court Should Deny Mr. Richards Leave to File Yet A Fifth Complaint.................. 17

V.   CONCLUSION..................................................................................................... 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Aqua Metals Inc. Sec. Litig.*,
 2019 WL 3817849 (N.D. Cal. Aug. 14, 2019) ................................................................ 6

*Astiana v. Hain Celestial Grp., Inc.*,
 783 F.3d 753 (9th Cir. 2015) ...................................................................................... 15

*In re Bank of America Corp.*,
 2011 WL 740902 (N.D. Cal. Feb. 24, 2011) ................................................................ 8

*Brown v. Brewer*,
 2010 WL 2472182 (C.D. Cal. June 17, 2010) .............................................................. 9

*Cal. Bagel Co. v. Am. Bagel Co.*,
 2000 WL 35798199 (C.D. Cal. June 7, 2000) ............................................................ 17

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
 511 U.S. 164 (1994) ..................................................................................................... 9

*Cleveland v. Groceryworks.com, LLC*,
 200 F. Supp. 3d 924 (N.D. Cal. 2016) ....................................................................... 16

*Colony Cove Props., LLC v. City of Carson*,
 640 F.3d 948 (9th Cir. 2011) ....................................................................................... 2

*Cooper v. Simpson Strong-Tie Co.*,
 460 F. Supp. 3d 894 (N.D. Cal. 2020) ....................................................................... 16

*Crago v. Charles Schwab & Co.*,
 2017 WL 2540577 (N.D. Cal. June 12, 2017) ............................................................ 12

*In re ECOtality, Inc. Sec. Litig.*,
 2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) .......................................................... 6-7

*In re Facebook, Inc. Sec. Litig.*,
 405 F. Supp. 3d 809 (N.D. Cal. 2019) ......................................................................... 9

*Grier v. Finjan Holdings (In re Finjan Holdings, Inc.)*,
 58 F.4th 1048 (9th Cir. 2023) .................................................................................... 11

*Henry v. San Francisco Police Dep't*,
 2014 WL 5494840 (N.D. Cal. Oct. 30, 2014), *aff'd*,
 668 F. App'x 727 (9th Cir. 2016)............................................................................... 17

*Irving Firemen's Relief & Ret. Fund v. Uber Tech., Inc.*,
 998 F.3d 397 (9th Cir. 2021) ............................................................................... 11, 15

ii

*Kas v. Financial Gen. Bankshares, Inc.*,
     796 F.2d 508 (D.C. Cir. 1986) ................................................................................. 13

*Lazar v. Superior Court*,
     12 Cal. 4th 631 (1996) ........................................................................................... 14

*Lectrodryer v. SeoulBank*,
     77 Cal. App. 4th 723 (Cal. Ct. App. 2000) ............................................................ 15

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
     601 U.S. 257 (2024) ................................................................................................. 6

*Manger v. Leapfrog Enterprises, Inc.*,
     229 F. Supp. 3d 1126 (N.D. Cal. 2017) ................................................................. 12

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
     540 F.3d 1049 (9th Cir. 2008) ................................................................................. 6

*Mulquin v. Nektar Therapeutics*,
     510 F. Supp. 3d 854 (N.D. Cal. 2020) ................................................................... 11

*Neiber v. Xyience, Inc.*,
     2007 WL 9776741 (S.D. Cal. Nov. 28, 2007) ....................................................... 12

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
     730 F.3d 1111 (9th Cir. 2013) ...................................................................... 10, 12 n.1

*In re Ocera Therapeutics, Inc. Sec. Litig.*,
     2018 WL 7019481 (N.D. Cal. Oct. 16, 2018), *aff'd*,
     806 F. App'x 603 (9th Cir. 2020) ..................................................................... 11, 12

*Oregon Pub. Emps. Ret. Fund, v Apollo Grp. Inc.*,
     774 F.3d 598 (9th Cir. 2014) ................................................................................. 11

*Panter v. Marshall Field & Co.*,
     646 F.2d 271 (7th Cir. 1981) ................................................................................. 13

*In re Paypal Holdings, Inc.*,
     2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ............................................................ 9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
     759 F.3d 1051 (9th Cir. 2014) ................................................................................. 5

*In re Rigel Pharm., Inc. Sec. Litig.*,
     697 F.3d 869 (9th Cir. 2012) ................................................................................ 5, 6

*Sanchez v. IXYS Corp.*,
     2018 WL 4787070 (N.D. Cal. Oct. 2, 2018) ........................................................... 8

*Santa Fe Indus., Inc. v. Green*,
     430 U.S. 462 (1977) ..................................................................................... 1, 13, 17

iii

*In re Union Exploration Partners Sec. Litig.*,
    1992 WL 203812 (C.D. Cal. June 18, 1992) ................................................................ 13

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
    382 F. Supp. 2d 1173 (N.D. Cal. 2004) ...................................................................... 10

*Varjabedian v. Emulex Corp.*,
    888 F.3d 399 (9th Cir. 2018) ........................................................................................ 5

*Vaughn v. Teledyne, Inc.*,
    628 F.2d 1214 (9th Cir. 1980) ...................................................................................... 5

*White v. Starbucks Corp.*,
    497 F. Supp. 2d 1080 (N.D. Cal. 2007) ...................................................................... 16

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ........................................................................................ 5

**Statutes & Rules**

8 Del. C. § 144(a)(2) ........................................................................................................ 4, 16

8 Del. C. § 228 ................................................................................................................. 4, 16

8 Del. C. § 251 ................................................................................................................. 4, 16

8 Del. C. § 262 ................................................................................................................. 4, 16

28 U.S.C. § 1927 .............................................................................................................. 1, 18

Cal. Bus. & Prof. Code § 17200 ..................................................................................... 4, 16

Cal. Civ. Proc. Code 338 ..................................................................................................... 15

Cal. Corp. Code §§ 25000-25707 ........................................................................................ 15

Cal. Corp. Code § 25401 ................................................................................................. 4, 15

Cal. Corp. Code § 25403 ................................................................................................. 4, 15

Cal. Corp. Code § 25504.1 .............................................................................................. 4, 15

Fed. R. Civ. P. 8(a) .............................................................................................................. 14

Fed. R. Civ. P. 9(b) ........................................................................................................ *passim*

Private Securities Litigation Reform Act of 1995 ("PSLRA"),
    15 U.S.C. § 78u-4 ..................................................................................................... *passim*

Rule 10b-5, 17 C.F.R. § 10b-5(b) ................................................................................. 1, 2, 5

iv

Rule 14e-3, 17 C.F.R. § 78n(3).................................................................... 1, 2, 5

Securities Exchange Act of 1934 Section 10(b), 15 U.S.C. § 78j(b)................................................. *passim*

Securities Exchange Act of 1934 Section 14(e), 15 U.S.C. § 78n(3) ............................................. *passim*

DEFENDANTS' NOTICE OF MOTION                    CASE NO.: 4:24-cv-01065-HSG
AND MOTION TO DISMISS COMPLAINT

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 19, 2024 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2 – 4th Floor of the Court, located at 1301 Clay Street, Oakland, CA 94612, Defendants Centripetal Networks, Inc., Steven Rogers and Jonathan Rogers will, and hereby do move this Court for an order dismissing with prejudice Plaintiff Albert Richards' Complaint (Dkt. No. 1). This Motion to Dismiss is made pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. The Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Court's file and records in this action, and such argument as may be presented to the Court at the time of the hearing.

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Dated: June 24, 2024

By: */s/ Jonathan Mark Wagner*
Jonathan Mark Wagner (admitted *pro hac vice*)
jwagner@kramerlevin.com
1177 Avenue of the Americas
New York, NY 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000

Lisa Kobialka (SBN 191404)
lkobialka@kramerlevin.com
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Tel.: (650) 752-1700
Fax: (650) 752-1800

*Attorneys for Defendants Centripetal Networks, Inc.,
Steven Rogers and Jonathan Rogers*

DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS COMPLAINT

CASE NO.: 4:24-cv-01065-HSG

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   INTRODUCTION

3       This is plaintiff Albert Richards' fourth complaint against Centripetal and its officers and/or

4  directors.  He brought the first three in "*Richards I*" in his capacity as a Centripetal noteholder.  The

5  Court dismissed most of those claims.  *See Richards v. Centripetal, et al.*, 4:23-cv-00145-HSG, Dkt.

6  Nos. 50 & 79. Mr. Richards brings this case—"*Richards II*"—in his capacity as a Centripetal

7  stockholder, making allegations that a Centripetal merger transaction that closed in February 2022,

8  eight months before Mr. Richards filed *Richards I*, was a "fraudulent squeeze out merger" and unfair

9  to preferred stockholders.  No explanation is given why Mr. Richards split his claims and multiplied

10  the proceedings in this fashion, imposing unnecessary and additional burdens on the parties and the

11  Court. *See* 28 U.S.C. § 1927.

12       As complete diversity is lacking, the purported grounds for federal jurisdiction are claims that

13  Mr. Richards has attempted to plead under the federal securities laws, Section 10(b) of the Securities

14  Exchange Act and Rule 10b-5, and Section 14e of the Securities Exchange Act and Rule 14e-3.  As we

15  show below, however, Mr. Richards has not come remotely close to pleading those claims properly.

16  Defying the stringent pleading standards under Rule 9(b) and the PSLRA, Mr. Richards' "puzzle

17  pleading" fails to plead not just one but rather several elements of securities fraud, including (i) falsity,

18  (ii) reliance, (iii) loss causation, and (iv) damages.

19       Beyond that, Mr. Richards' federal securities counts are, at bottom, nothing more than state law

20  fiduciary duty claims—claims which Mr. Richards attempts to plead in his first two counts—dressed

21  up as federal securities fraud.  The federal claims thus run afoul of the United States Supreme Court's

22  holding in *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977), barring fiduciary duty claims

23  masquerading as federal securities violations.

24       We also show that, were the Court to decide in its discretion to exercise supplemental

25  jurisdiction over the state claims, they too suffer from pleading defects that mandate their dismissal.

26       Finally, since this is Mr. Richards' fourth complaint—across two litigations—the Court should

27  deny any request by Mr. Richards for leave to replead.  As set forth below, there is no way that Mr.

28  Richards will ever be able to plead viable federal securities claims concerning the Centripetal merger.

Equally critical, there is no reason why Mr. Richards could not have pleaded those claims as part of *Richards I*. As the Court noted in denying Mr. Richards leave to replead in its latest decision in *Richards I*, "[t]his sort of needlessly iterative pleading wastes the time and resources of the Court and the parties." *Richards I*, Dkt. No. 79 at 7.

## II.    STATEMENT OF THE ISSUES

1.    Whether the Complaint's Third Count for violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, and Fourth Count for violation of Section 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(3) and Rule 14e-3, should be dismissed because these counts:

      a.    Do not allege any actionable false or misleading statement, and thus do not properly plead the element of falsity.

      b.    Do not properly plead reliance.

      c.    Do not allege facts showing either that (i) Centripetal's stock price declined because of the materialization of previously concealed information, or that (ii) Mr. Richards suffered an economic loss as a result of his merger consideration election, and thus do not plead the elements of loss causation or damages.

2.    Whether, if the Court were to exercise supplemental jurisdiction over the pendent state claims, those claims should be dismissed.

## III.    STATEMENT OF FACTS

The following facts, accepted as true solely for the purposes of this motion, are set forth in the Complaint (Dkt. No. 1) and documents attached to or referenced in that pleading. *See Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011) (on a motion to dismiss, the Court considers the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice").

In October 2022, Mr. Richards filed a complaint in California Superior Court against Centripetal, a privately-held cyber-security company, and Centripetal officers Steven Rogers and Jonathan Rogers, concerning (i) contractual rights premised upon two convertible promissory notes issued by Centripetal to Mr. Richards, and (ii) alleged misrepresentations concerning the financial state

of Centripetal. In January 2023, Defendants removed that action to this Court as Case No. 4:23-cv-00145-HSG—*Richards I*—and in turn moved to dismiss. Effectively acknowledging that his original complaint was legally insufficient, rather than respond to Defendants' motion Mr. Richards filed a First Amended Complaint, which Defendants also moved to dismiss. In January 2024, the Court dismissed most of Mr. Richards' claims and otherwise narrowed those remaining. *Richards I* Dkt. No. 50. Mr. Richards then filed his Second Amended Complaint on January 26, 2024, alleging many of the same claims already dismissed by the Court. *Richards I* Dkt. No. 53. Following Defendants' motion to dismiss that pleading, and after Mr. Richards voluntarily discontinued some claims, the Court on May 8, 2024 issued its decision on Defendants' motion, dismissing (with one minor exception) the same counts and claims it dismissed in its prior decision. *Richards I* Dkt. No. 79.

On February 21, 2024, Mr. Richards filed this action—*Richards II*—against the same Centripetal defendants as well as others and premised upon Mr. Richards' status as a Centripetal shareholder. Notably, this new Complaint pleads claims that accrued prior to Mr. Richards' first complaint in *Richards I*.

The Complaint alleges that in June and September 2014 Mr. Richards purchased a total of $500,000 of Series A-2 Centripetal preferred shares. Compl. ¶ 19. After reciting much of the same history and allegations of "accounting deception" pleaded in *Richards I*–charges that the Court there ruled were legally irrelevant*, see* Dkt. 50 at 10, 11—the Complaint challenges as "unfair" (*id.* ¶174) and "fraudulent" (*id.* ¶ 266) a February 2022 transaction in which (i) Centripetal undertook a corporate restructuring in the form of a Merger, and (ii) Centripetal Networks, Inc., now Centripetal Networks, LLC, became a wholly owned subsidiary of a holding company, CNI Holdings, Inc. *Id.* ¶ 242.

To effectuate the transaction, each share of Centripetal preferred stock then outstanding was converted into the right to receive, at the election of the holder, either (i) an immediate cash payment of $2.18 per share, (ii) a lesser immediate cash payment plus a proportionate participation in certain future payments, or (iii) one share of new common stock of CNI Holdings. *Id.* ¶¶ 188-189. As Centripetal reported to its preferred shareholders, this consideration was determined following extended and arms-length negotiations with the two largest holders of Centripetal preferred stock, including defendant Alsop Louie. *Id.* ¶¶ 190, 258. In connection with the merger, an independent

3

investment banking firm, Ocean Tomo, rendered a fairness opinion concluding that the merger price was fair to preferred shareholders. *Id.* ¶¶ 228, 259. The merger price, as well as the Ocean Tomo opinion, were based in part on a valuation of Centripetal conducted by another independent investment bank, Houlihan Lokey, who valued Centripetal stock at $2.05 per share. *Id.* ¶¶ 220-221, 259.

On February 1, 2022, Mr. Richards elected to convert his Centripetal preferred stock into CNI Holdings' common stock. *Id.* ¶ 220. On February 22, 2022, the Merger was approved by a majority of the Company's common and preferred stock voting together as a single class and by the holders of a majority of the Company's preferred stock—which also constituted approval by a majority of the shares of the Company's capital stock not held by members of the Company's management or their affiliates. *Id.* ¶ 262. Mr. Richards today remains a Centripetal shareholder.

The *Richards II* Complaint pleads that the merger was "unfair" (*id.* ¶ 174) and a "fraudulent 'squeeze out' merger" that "breached [defendants'] fiduciary duty, violated federal securities laws, and violated Delaware and California statutory and common law." Compl. Pages 1-4.

The Complaint sweeps into its dragnet of defendants (i) Centripetal and its officers Steven Rogers and Jonathan Rogers, (ii) Centripetal's former CFO Paul Barkworth, since voluntarily dismissed by Mr. Richards, (iii) Houlihan Lokey, also since voluntarily dismissed by Mr. Richards, (iv) Ocean Tomo, (v) former Centripetal preferred shareholder Alsop Louie and its related entities and principals Gilman Louie, Joseph Addiego and William Crowell, and (vi) former Centripetal shareholder Cristobel Conde. The Complaint pleads the following claims: (i) breach of fiduciary duty under California law and Delaware law (Counts One and Two); (ii) violation of Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 (Counts Three and Four); (iii) constructive fraud, concealment, negligent misrepresentation, intentional fraud, and fraudulent inducement (Counts Five through Nine); (iv) unjust enrichment (Count Ten); (v) violation of California's securities law statute, Corporations Code Sections 25401, 25403, and 25504.1 (Counts Eleven through Thirteen); (vi) violation of California Business and Professions Code Section 17200 (Count Fourteen); and (vii) violation of Delaware General Corporations Law Sections 144, 228, 251, and 262 (Count Fifteen).

As we show below, Counts Three and Four do not properly state a claim for a violation of federal securities laws. Following dismissal of those claims, in the event the Court exercises

supplemental jurisdiction over the pendent state claims, those claims too do not state a claim and should be dismissed. And having now brought two litigations and four complaints, Mr. Richards should not be given yet a fifth opportunity to plead.

## IV.    ARGUMENT

### A.    Mr. Richards Does Not Properly State a Claim Under Sections 10(b) or 14(e) (Counts Three and Four)

Mr. Richards brings two federal counts, for violation of Exchange Act Section 10(b) and Rule 10b-5 and Exchange Act Section 14(e) and Rule 14e-3. Neither states a claim.

A Section 10(b) and Rule 10b-5 plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1057 (9th Cir. 2014) (citation omitted). Section 14(e) "is generally the same as [Section] 10(b) and Rule 10b-5, but is applicable specifically to tender offers rather than other purchases or sales of securities." *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1219 (9th Cir. 1980). Although not relevant to this motion, Sections 10(b) and 14(e) differ in that in the Ninth Circuit, Section 14(e) requires a showing of negligence rather than scienter. *Varjabedian v. Emulex Corp.*, 888 F.3d 399, 408 (9th Cir. 2018).

Under Fed. R. Civ. P. 9(b), claims alleging fraud are subject to a heightened pleading requirement: a party must "state with particularity the circumstances constituting fraud or mistake." Rule 9(b) "requires particularized allegations of the circumstances constituting fraud, including identifying the statements at issue and setting forth what is false or misleading . . . about the statement and why the statements were false or misleading at the time they were made." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). Likewise, all private securities fraud complaints are subject to the "more exacting pleading requirements" of the PSLRA, which "require that a complaint 'plead with particularity both falsity and scienter.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) (citation omitted).

CASE NO.: 4:24-cv-01065-HSG

Applying this standard, the Court should dismiss Counts Three and Four, as Mr. Richards' securities claims suffer from several incurable defects. *First*, Mr. Richards does not allege falsity. *Second*, the Complaint does not properly plead reliance. And *third and fourth*, the Complaint does not plead economic loss or loss causation or damages.

### 1. The Complaint is a "Puzzle Pleading" that Does Not Properly Plead Falsity

The PSLRA "has exacting requirements for pleading 'falsity.'" *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008) (citation omitted). Under the PSLRA, "to properly allege falsity, a securities fraud complaint must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading.…'" *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d at 877 (quoting 15 U.S.C. § 78u-4(b)(1)). And to the extent that Mr. Richards roots his securities claims in alleged omissions, "pure omissions," or "when a speaker says nothing, in circumstances that do not give any particular meaning to that silence" are not actionable. *Macquarie Infrastructure Corp. v. Moab Partners, L.P.,* 601 U.S. 257, 263 (2024).

Spanning 67 pages and 398 paragraphs, the Complaint cites hundreds of statements supposedly made by 13 Defendants over a seven-year period, without clearly distinguishing those that Mr. Richards is challenging from those that he is not. In violation of Rule 9(b), Mr. Richards sets out general categories of statements that he alleges were misleading, makes boilerplate charges of falsity (*e.g.* Compl. ¶ 290), and forces Defendants—and the Court—to sift through the multitude of statements in the pleading, guess which ones are at issue, and then match the statements to the categories to determine why they are alleged to be false or misleading. As one example, in Paragraph 300, Mr. Richards alleges that "statements in support of the merger" concerning "the consideration offered to stockholders, the intrinsic value of Centripetal, and potential conflicts of internal faced by certain Defendants" were "misleading," but he does not identify the specific statements to which these allegations of falsity apply. That is classic "puzzle pleading," improperly requiring '"defendants and the Court to match up the allegedly false and misleading statements that form the basis of plaintiff's claims with the reasons those statements are misleading.'" *In re Aqua Metals Inc. Sec. Litig.*, 2019 WL 3817849, at *7-8 (N.D. Cal. Aug. 14, 2019) (citation omitted) (Gilliam, D.J.; granting motion to dismiss on puzzle pleading grounds); *see also In re ECOtality, Inc. Sec. Litig.*, 2014 WL 4634280, at

1    *3 (N.D. Cal. Sept. 16, 2014) (Dismissing 10b-5 claim, including on puzzle pleading grounds; the

2    Court "will not attempt to divine Plaintiffs' intentions by trying to match potentially misleading

3    statements with the alleged problems facing [Defendant]").

4        Putting aside this legal deficiency—standing alone a basis to dismiss—and reading the

5    Complaint far more generously than required, Mr. Richards appears to allege three categories of

6    supposedly actionable statements or omissions: (i) information concerning Houlihan's valuation of

7    Centripetal (Compl. ¶¶ 214-15, 229, 260); (ii) information concerning the limitations of the Ocean

8    Tomo fairness opinion (*id.* ¶¶ 230-31); and (iii) a failure to disclose that the Rogerses were allegedly

9    ignoring their fiduciary duties and acting solely in their own self-interest in pursuing the Merger. *Id.* ¶

10   218. These allegations do not support a legally viable securities claim.

11                            a.       **Houlihan Valuation**

12       Mr. Richards alleges 10(b) and 14(e) violations because the Merger price was based in part on

13   a Houlihan valuation that was provided to Mr. Richards but (i) "was prepared at the sole behest of the

14   conflict-ridden Rogers defendants," (ii) "was clearly labeled a Draft-For Discussion Purposes Only,"

15   (iii) "relied solely upon management inputs," (iv) "valued the entire company at half the amount of

16   insurance Centripetal had on patent claims against Cisco Systems," and (v) "utilized a questionable

17   valuation methodology with virtually no value given to other valuable patent claims and virtually no

18   value to ongoing licensing revenues."  Compl. at page 3:3-8.

19       The Complaint, however, specifically pleads that the Houlihan valuation *itself*, made available

20   to stockholders and which Mr. Richards himself read (*id.* ¶ 213), disclosed each of these facts.

21   Paragraph 213 of the Complaint recites the disclaimer to the Houlihan valuation, stating that the

22   valuation was being "provided solely for the benefit of … Messrs. Jonathan Rogers and Steve[n]

23   Rogers and may not be relied upon by any other person or entity."  Paragraph 215 notes that each page

24   of the valuation was "clearly labeled 'Preliminary Draft for Discussion Purposes Only.'"  Paragraphs

25   208-09 and 213-15 describe Mr. Richards' pre-Merger questions to Defendants concerning the

26   valuation's various assumptions and projections, valuation conclusion and valuation methodology.

27       Mr. Richards' allegations predicated on supposed flaws in the Houlihan valuation do not state a

28   claim, for "'the market is not mislead [sic] when a transaction's terms are fully disclosed'" (citation

1  omitted).  *In re Bank of America Corp.*, 2011 WL 740902, at \*7 (N.D. Cal. Feb. 24, 2011) (dismissing

2  10b-5 claim).  *See also Sanchez v. IXYS Corp.*, 2018 WL 4787070, at \*3 (N.D. Cal. Oct. 2, 2018)

3  (finding that because publicly available information was "already included in the total mix of

4  information considered by shareholders," omission of the information thus could not form the basis of

5  a securities claim). Here, Mr. Richards own Complaint acknowledges that the Houlihan valuation

6  made available to shareholders—and which Mr. Richards read—fully disclosed the nature and scope of

7  that valuation.

8  ### b.    Ocean Tomo Fairness Opinion

9  Mr. Richards next predicates fraud on purported limitations of the Ocean Tomo fairness

10  opinion provided to shareholders. Mr. Richards principally complains that: (i) because "essentially all

11  meaningful assumptions and projections were provided by Centripetal … [t]his effectively reduced the

12  'fairness' analysis to one of checking Houlihan Lokey's math, as opposed to assessing whether the

13  'inputs' provided for the analysis were fair and/or reasonable" (Compl. ¶ 231); and (ii) any "[o]pinion

14  on the fairness of the conversion of the preferred stock to common stock was also notably absent" from

15  the fairness opinion.  *Id.* ¶ 261.

16  Critically, however, Mr. Richards does not allege that any statement in the fairness opinion was

17  false, hidden, or misleading.  To the contrary, Mr. Richards pleads that the fairness opinion "explicitly

18  stated" that it was Centripetal that provided "all meaningful assumptions and projections."  *Id.* ¶ 231.

19  As the Complaint likewise pleads, the fairness opinion described its limitations.  *See id.* ¶ 261 (fairness

20  opinion contained "so many disclaimers.…");  *see also id.* ¶ 230 (quoting the opinion's disclaimers

21  concerning the limited scope of Ocean Tomo's engagement).  These disclosures and disclaimers in the

22  fairness opinion itself—cited in Mr. Richards' own pleading—as a matter of law negate the element of

23  falsity.  Once again, Mr. Richards' charges of fraud are undone by his own pleading.  *In re Bank of*

24  *America*, 2011 WL 740902, at \*7.

25  ### c.    Alleged Breach of Fiduciary Duty

26  Finally, Mr. Richards alleges that Defendants violated Sections 10(b) and 14(e) "by not

27  disclosing that they were ignoring their fiduciary duties and were instead acting solely in their own

28  self-interest, this in their capacity as shareholders and not Board Members, S. Rogers and J. Rogers.  In

this way, Defendants supposedly "omitted material facts in conjunction with a securities transaction." Compl. ¶ 218.   This allegation cannot sustain Mr. Richards' securities claims.

Mr. Richards runs afoul of the iron-clad principle that "companies are not required to engage in self-flagellation by disclosing unproven allegations." *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019) (finding no duty to disclose potential privacy breaches when, at the time corporate statement was made, "the FTC only stated an intent to investigate but had not made any formal finding" of a violation).  *See also In re Paypal Holdings, Inc.*, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018) ("Federal securities laws do not impose upon companies 'a duty to disclose uncharged, unadjudicated wrongdoing.'") (citation omitted).  The Rogerses' supposed concealed and self-interested motivations cannot support a securities claim because "the allegedly omitted details are not necessarily *facts,* but rather factual *allegations,* and unless and until judgment is granted in [Mr. Richards'] favor, their omission from the [Merger information] simply could not have been material." *Brown v. Brewer*, 2010 WL 2472182, at *23-24 (C.D. Cal. June 17, 2010) (finding no material omission where "[m]andating the disclosure of [plaintiff's] allegations would compel [d]efendants to essentially accuse themselves of breaching their fiduciary duties").  This principle applies with especial force here, in the fiduciary duty context, for "[t]he securities laws do not 'effectively require [an issuer] to accuse [it]sel[f] of breach of fiduciary duty.'"  *Id.* at *23, citing *Virginia Bankshares v. Sandberg,* 501 U.S. 1083, 1098 n.7 (1991).

\* \* \*

In sum, because the Complaint does not allege a false or misleading statement or omission—the bedrock element of a federal securities claim—on this ground alone Mr. Richards' third and fourth counts should be dismissed.

### 2.    The Complaint Does Not Properly Plead Reliance

Likewise missing from Mr. Richards' Complaint is any proper allegation of reliance on a purportedly false or misleading statement, as required by Sections 10(b) and 14(e).  *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 180 (1994) ("A plaintiff must show reliance on the defendant's misstatement or omission to recover under 10b–5 … Allowing

plaintiffs to circumvent the reliance requirement would disregard the careful limits on 10b–5 recovery mandated by our earlier cases").

Mr. Richards pleads that Defendants' statements were "important in deciding whether to agree to the squeeze-out merger" (Compl. ¶ 302), and that he "justifiably relied on Defendants' untrue statements of material fact and Defendants' omissions to state necessary material fact, in buying and selling securities." *Id.* ¶¶ 293, 305. Putting aside the absence of falsity, these are just boilerplate charges – far short of satisfying Rule 9(b). *In re Van Wagoner Funds, Inc. Sec. Litig.,* 382 F. Supp. 2d 1173, 1187 (N.D. Cal. 2004) (dismissing 10b-5 claim in part on reliance grounds; "the Court finds . . . general allegations of reliance insufficient"). Equally critical, they are undone by allegations in the Complaint that negate reliance. Mr. Richards could not have relied on any alleged false statements supposedly touting the fairness of the cash consideration because he questioned the truth of any such statements, *see* Compl. ¶ 208-209, 213-15, and ultimately declined to take that consideration; he merely held on to his Centripetal shares.

It is also worth noting that Mr. Richards made his election to keep his Centripetal shares on February 1, 2022 (*id.* ¶ 220-21), even before receiving the Ocean Tomo fairness opinion sent to shareholders by email on February 10. *Id.* ¶¶ 227-228.

As a matter of law, therefore, Mr. Richards could not have relied on any false or misleading statements concerning the value of the Company—or any other purportedly false statement or omission cited in his sprawling pleading.

### 3.    The Complaint Does Not Properly Plead Loss Causation and Damages

Mr. Richards' securities law counts should be dismissed for the additional, independent reason that he does not properly allege loss causation and damages.

On a Section 10(b) claim, "'to satisfy the loss causation requirement, the plaintiff must show that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff.'" *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1119 (9th Cir. 2013) (citation omitted). Mr. Richards does not plead that the truth of any allegedly misleading statement was ever revealed, much less that it was accompanied by or caused a drop in the value of his Centripetal shares.

1  *Irving Firemen's Relief & Ret. Fund v. Uber Tech., Inc.,* 998 F.3d 397, 409-10 (9th Cir. 2021) ("Even

2  in a privately traded securities case, however, 'fundamentally the same loss causation analysis

3  occurs.'") (quoting *Nuveen v. City of Aleneda*, 730 F.3d at 1123); *Mulquin v. Nektar Therapeutics*, 510

4  F. Supp. 3d 854, 873 (N.D. Cal. 2020) (Gilliam, D.J.) (dismissing 10b-5 claim; "Plaintiffs fail to

5  establish loss causation").

6        With respect to his 14(e) claim, Mr. Richards must allege that he "suffered an economic loss as

7  a result of the acceptance or rejection of the tender offer." *Grier v. Finjan Holdings (In re Finjan*

8  *Holdings, Inc.)*, 58 F.4th 1048, 1055 (9th Cir. 2023). This requirement "requires a showing that the

9  defendant caused the loss for which the plaintiff seeks to recover damage, and plaintiff must prove

10  both economic loss and proximate causation." *In re Ocera Therapeutics, Inc. Sec. Litig.*, 2018 WL

11  7019481, at *11 (N.D. Cal. Oct. 16, 2018), *aff'd*, 806 F. App'x 603 (9th Cir. 2020); *see also Oregon*

12  *Pub. Emps. Ret. Fund, v Apollo Grp. Inc.*, 774 F.3d 598, 608 (9th Cir. 2014) (a plaintiff must allege a

13  "'causal connection between the deceptive acts that form the basis for the claim of securities fraud and

14  the injury suffered.'") (citation omitted).

15        The Complaint pleads that (i) the "merger price . . . significantly undervalued the Company and

16  was unfair to preferred stockholders" (Compl. ¶ 266); and (ii) Mr. Richards "relied on Defendants to

17  comply with their legal obligations and to provide full, accurate, and truthful information to allow

18  [Mr.] Richards to act as an informed shareholder and to exercise his rights in connection with the

19  squeeze-out merger." *Id.* ¶ 309. In turn, according to the Complaint, "Defendants' misrepresentations

20  and omissions caused [Mr.] Richards to suffer damages, in an amount to be proved at trial." *Id.* ¶¶ 294,

21  306. These conclusory statements do not adequately plead loss causation with particularity, as

22  required by Rule 9(b) and the PSLRA.

23        *First*, Mr. Richards does not identify any specific economic loss suffered as a result of the

24  alleged "undervaluing" of the Company or his exercise of rights in connection with the Merger. Nor

25  could he, since as noted above Mr. Richards did not accept the cash consideration and instead retained

26  his shares.

27        *Second*, even if Mr. Richards did allege some economic loss as a result of the Merger, the

28  Complaint does not plead facts showing that "the required causal relationship existed between

11

[Defendants'] purported misrepresentations or omissions and those losses." *Ocera Therapeutics, Inc. Sec. Litig.*, 806 F. App'x 603, 604-05 (9th Cir. 2020) In *Ocera*, the Court affirmed dismissal on loss causation grounds of plaintiff shareholders' securities claim alleging that as a result of misleading merger disclosures, they suffered economic losses of "'the difference between the price Ocera stockholders received and the true value of their shares at the time of the [acquisition].'" *Id.* The Court found that "[t]he suggestion that the analysts' opinions of what the shares might be worth were different from what was actually received, let alone that they represented the shares' true value, is too speculative to plead with particularity that shareholders experienced losses—or to plead with particularity that the required causal relationship existed between Ocera's purported misrepresentations or omissions and those losses." *Id. See also Manger v. Leapfrog Enterprises, Inc.*, 229 F. Supp. 3d 1126, 1135 (N.D. Cal. 2017) (shareholders of merger target "failed to allege adequately loss causation" in connection with corporation's failure to disclose financial information; shareholders alleged that they were injured by rejection of separate offer that would have paid shareholders ten cents more per share, but failed to allege how non-disclosure of target's performance led to rejection of higher offer).[1]

\* \* \*

As a related point, Mr. Richards likewise has not properly pleaded damages—for at least two reasons. As set forth at pages 9-10 above, Mr. Richards cannot state the element of reliance; and without reliance, he cannot show any economic harm. *Crago v. Charles Schwab & Co.,* 2017 WL 2540577, at \* 6 (N.D. Cal. June 12, 2017) (dismissing 10b-5 claim for failure to plead reliance and economic loss and explaining the connection between the two). Beyond that, without the element of loss causation, there is no proper allegation of damage caused on account of any false or misleading statement. *See Neiber v. Xyience, Inc.,* 2007 WL 9776741, at \*5 (S.D. Cal. Nov. 28, 2007) (dismissing 10b-5 claim for "fail[ing] to plead with particularity the elements of scienter, causation, and damages"; plaintiff "failed to demonstrate any connection between the alleged fraud and its damages").

---

[1] Any claim that Defendants' alleged false statements induced Mr. Richards to exercise his rights in a certain way is also insufficient to plead loss causation. *See Nuveen Mun. High Income Opportunity Fund*, 730 F.3d at 1121 ("We have consistently rejected loss causation arguments, like [plaintiff's]— that a defendant's fraud caused plaintiffs a loss because it 'induced them to buy the shares'—because the argument renders the concept of loss causation meaningless by collapsing it into transaction causation.").

#### 4. Mr. Richards' Claims are Otherwise Barred By the United States Supreme Court's Holding in *Santa Fe v. Green*

At bottom, Mr. Richards' federal securities counts are nothing more than breach of fiduciary duty claims improperly dressed up as securities fraud. That is legally impermissible under settled United States Supreme Court authority. The federal securities laws are not intended to redress alleged "instances of corporate mismanagement … in which the essence of the complaint is that shareholders were treated unfairly by a fiduciary." *Santa Fe Indus., Inc,* 430 U.S. at 477.

The Complaint itself definitively establishes that the nub of Mr. Richards' securities claims is a breach of fiduciary duty—not actionable under Sections 10(b) or 14(e). To begin with, the same core allegations of the Section 10(b) and 14(e) claims also comprise the core of Mr. Richards' breach of fiduciary duty claim. *Compare* Count One (Compl. ¶¶ 267-75) *with* Counts Three and Four (*id.* ¶¶ 286-306).

Equally revealing, the principal basis for Mr. Richards' securities fraud claim—putting aside his legally defective claims concerning the Houlihan and Ocean Tomo related disclosures—is his allegation in Paragraph 218 that, "by not disclosing that they were ignoring their fiduciary duties and were instead acting solely in their own self-interest, this in their capacity as shareholders and not Board Members, S. Rogers and J. Rogers omitted material facts in conjunction with a securities transaction." Under *Santa Fe,* however, defendants need not disclose their intentions or motivations:

> Courts have consistently held that since a shareholder cannot recover under 10b-5 for a breach of fiduciary duty, neither can he 'bootstrap' such a claim into a federal securities action by alleging that the disclosure philosophy of the statute obligates defendants to reveal either the culpability of their activities, or their impure motives for entering into the allegedly improper transaction.

*Panter* v. *Marshall Field & Co.,* 646 F.2d 271, 288 (7th Cir. 1981).

Courts routinely dismiss securities fraud claims just like Mr. Richards' alleging nothing more than a breach of fiduciary duty. *See, e.g., In re Union Exploration Partners Sec. Litig.*, 1992 WL 203812, at *3 (C.D. Cal. June 18, 1992) (fraud claims premised on allegations that defendants failed to disclose that their actions constituted a breach of fiduciary duty "are clearly barred by *Santa Fe* and must be dismissed with prejudice"); *Kas v. Financial Gen. Bankshares, Inc.*, 796 F.2d 508, 513 (D.C. Cir. 1986) ("where the failure to disclose involves the 'true' motivations of the directors and so would require a court to probe the business judgment of the directors, *Santa Fe* holds that the claim states no

13

cause of action under the 1934 Act."). Mr. Richards' remedy, if any, is a claim for breach of fiduciary duty, not a phony securities claim.

**B.    Were the Court to Exercise Supplemental Jurisdiction, Mr. Richards' State Law Claims Should Be Dismissed**

Following dismissal of the federal securities fraud claims, no claims remain over which the Court has original jurisdiction—complete diversity between the parties does not exist. *See* Compl. ¶ 1 (Plaintiff Albert Richards "resides in, and his principal place of business is in, Belvedere, California") & ¶ 3 (the headquarters of Defendant Alsop Louie Management LLC is "located at 943 Howard Street, San Francisco, California 94103"). We now go on to show that in the event this Court exercises its discretion to retain jurisdiction—for example, because another, related lawsuit by Mr. Richards against the Centripetal defendants is already pending here—the remaining counts do not state a claim.

\* \* \*

As a preliminary matter, all of Mr. Richards' state law claims should be dismissed for the simple reason that, in violation of Fed. R. Civ. P. 8(a), the complaint—especially the state law claims—do not set out "a short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint is 67 pages long, and contains almost 400 paragraphs.  Making matters more confusing, each claim incorporates prior paragraphs, with little if any focus on the material allegations.

Below, we address the state law claims as best we are able to discern them, notwithstanding Mr. Richards' puzzle pleading.

**1.    Mr. Richards' State Claims Premised on Fraud Should be Dismissed (Counts Five Through Nine, Eleven through Thirteen)**

<u>Fraud-Based Claims (Counts Five through Nine)</u>: Each of these common law claims requires falsity or a misrepresentation, causation and damages, among other elements. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (elements of common law fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.,* to induce reliance; (d) justifiable reliance; and (e) resulting damage") (citation omitted). Rule 9(b) applies to these common law claims as well.

Mr. Richards premises these claims on two categories of alleged misrepresentations concerning (i) the financial health of Centripetal and "the company's finances"; and (ii) disclosures with respect to

the Merger. *E.g.*, Compl. ¶¶ 312, 322-323, 328, 337, 347. But no particulars are provided with respect to any alleged misrepresentations concerning Centripetal's financial state; it is hard to parse exactly what Mr. Richards is complaining about and whether his puzzle-pleading allegations of "corporate malfeasance in every single year" from 2013 "leading up to 2022" are merely for "historical context for the fraudulent 'squeeze out' merger" (Compl. ¶ 24) or are meant to state a claim—which would be time barred under California's three-year statute of limitations for fraud. Cal. Civ. Proc. Code 338. With respect to alleged misrepresentations concerning the Merger, as demonstrated at pages 6-9 above Mr. Richards does not properly allege falsity. Nor has Mr. Richards properly alleged reliance, loss causation or damages—also elements of any common law fraud claim.

> California Corporations Code Sections 25401, 25403 and 25504.1 (Counts Eleven through Thirteen): Like Federal Sections 10(b) and 14(e), California Corporate Securities Law (codified in Cal. Corp. Code Sections 25000-25707) requires in connection with the sale of a security, "an untrue statement of a material fact or omi[ssion] of a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading." Loss causation is likewise a required element of these claims. *Irving Firemen's Relief & Ret. Fund,* 998 F.3d at 406 ("we turn to the federal standard for loss causation" to assess causation under California securities statute). For the same reasons that the Court should dismiss the federal counts, the state securities claims should also be dismissed.

## 2.    Mr. Richards Does Not Properly Plead Unjust Enrichment (Count Ten)

A claim for unjust enrichment requires a plaintiff to plead two elements: "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank,* 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000). Mr. Richards does not allege any benefit that he conferred on Defendants that was unjustly retained. Mr. Richards purchased shares from Centripetal, which he continues to hold. Additionally, Mr. Richards has not properly alleged any fraud with respect to his original purchase of those shares or otherwise. *See Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015) (explaining that restitution and unjust enrichment "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request") (internal quotation marks omitted). And if the theory underlying Mr. Richards' Complaint is

accepted—that Centripetal underpaid those shareholders who took the cash consideration—then Mr. Richards as a continuing shareholder actually benefitted by Centripetal shortchanging others.

### 3. Mr. Richards Does Not State a Claim for Violation of California Business and Professions Code Section 17200 (Count Fourteen)

Mr. Richards alleges that Defendants engaged in business practices in violation of the California unfair competition law. The unfair competition law "defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.'" *Cooper v. Simpson Strong-Tie Co.*, 460 F. Supp. 3d 894, 917-18 (N.D. Cal. 2020) (quoting Cal. Bus. & Prof. Code § 17200). However, a claim under the unfair competition law requires as a predicate a violation of another statute. "Liability under the UCL is generally derivative of liability under another statutory violation." *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 961 (N.D. Cal. 2016) (citing *Rubin v. Wal–Mart Stores, Inc.*, 599 F. Supp. 2d 1176, 1179 (N.D. Cal. 2009) (dismissing UCL claims that were derivative of deficient claims for violations under the California Labor Code); *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1089-90 (N.D. Cal. 2007) (granting summary judgment dismissing Section 17200 claim where the court held that the underlying statutory claim was meritless). Mr. Richards does not state a claim for violation of (i) federal securities laws, *see* pages 5-14 above, (ii) California Corporations Code, *see* page 15 above, or (iii) any other statute, *see* below— and thus cannot state a claim under the UCL.

### 4. Mr. Richards Does Not State a Claim for Violation of Any Delaware Statute (Count Fifteen)

Mr. Richards alleges that "[b]ecause of the conflicts of interest, self-dealing and other malfeasance detailed above, Defendants failed to comply with the Delaware General Corporations Law provisions requiring timely statutory notice to shareholders (8 Del. C. § 262), sufficient written consent by shareholders (8 Del. C. § 228), disclosure of material facts concerning the directors' relationships and interests in the merger transaction (8 Del. C. § 144(a)(2)), and disclosure of who received, or would receive, consideration in connection with the merger (8 Del. C. § 251)." Compl. ¶ 395. At bottom, these claims are all based on an alleged failure to disclose. As demonstrated at pages 5-9 above, however, the Complaint does not properly plead any improper disclosure or omission. Thus, Count Fifteen should be dismissed as well.

DEFENDANTS' NOTICE OF MOTION                    CASE NO.: 4:24-cv-01065-HSG
AND MOTION TO DISMISS COMPLAINT

### C.    The Court Should Deny Mr. Richards Leave to File Yet A Fifth Complaint

How many complaints can one litigant file? This pleading is already Mr. Richards' fourth. Enough is enough.

The Court "may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency, or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Henry v. San Francisco Police Dep't*, 2014 WL 5494840, at *5 (N.D. Cal. Oct. 30, 2014), *aff'd*, 668 F. App'x 727 (9th Cir. 2016) (quoting *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010)). In addition, "[t]he futility of an amendment will, by itself, justify the denial of a motion for leave to amend." *Cal. Bagel Co. v. Am. Bagel Co.*, 2000 WL 35798199, at *24 (C.D. Cal. June 7, 2000) (internal quotation marks omitted).

Here, leave to amend would be futile. Given the disclosures in the merger materials cited by Mr. Richards own pleading as well as settled Supreme Court precedent, *see Santa Fe Indus., Inc.* 430 U.S. 462, there is no way that Mr. Richards will ever be able to plead a viable claim of federal securities fraud—the basis for federal jurisdiction. Nor could he ever properly plead his state claims, as set forth at pages 14-16 and in co-defendants' moving briefs.

Against this backdrop, another "needlessly iterative pleading wastes the time and resources of the Court and the parties." *See Richards I,* Dkt. No. 79 at 7. Mr. Richards has now filed four complaints across two actions, against the same Defendants, repeating many of the same allegations and without any explanation why he has burdened the Court and the parties by splitting his claims in this fashion. Nor has Mr. Richards explained why the claims in this case, which accrued in February 2022, were held back from his complaint in *Richards I*, filed eight months later in October 2022.

When this Court granted Mr. Richards leave to amend his *Richards I* First Amended Complaint following its decision to dismiss almost all his claims (*Richards I* Dkt. No. 50), Mr. Richards blithely re-pled many of those same claims and allegations in his Second Amended Complaint, notwithstanding the Court's prior decision—forcing the Centripetal Defendants to file and the Court to adjudicate yet another motion to dismiss.  Will Mr. Richards repeat this tactic if given leave to amend here?

DEFENDANTS' NOTICE OF MOTION                                    CASE NO.: 4:24-cv-01065-HSG
AND MOTION TO DISMISS COMPLAINT

1     In fairness to defendants, and if the governing pleading standards under Rule 9(b) and the

2 PSLRA are to have any effect, the "needlessly iterative pleading[s]" have to stop. *See* 28 U.S.C. §

3 1927.

4 **V.    CONCLUSION**

5     The Centripetal defendants join in and adopt the arguments made in the motions filed by co-

6 defendants, including the points made concerning legal defects in Mr. Richards' claims for breach of

7 fiduciary duty.

8     Mr. Richards' Complaint should be dismissed with prejudice and without leave to replead.

9

10  Dated:  June 24, 2024                            Respectfully Submitted,

11                                          By: */s/ Jonathan Mark Wagner*
                                               Jonathan Mark Wagner (admitted *pro hac vice*)
12                                             jwagner@kramerlevin.com
                                               KRAMER LEVIN NAFTALIS & FRANKEL LLP
13                                             1177 Avenue of the Americas
                                               New York, NY 10036
14                                             Tel.: (212) 715-9100
15                                             Fax: (212) 715-8000

16                                             Lisa Kobialka (SBN 191404)
                                               lkobialka@kramerlevin.com
17                                             KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                               333 Twin Dolphin Drive, Suite 700
18                                             Redwood Shores, CA 94065
19                                             Tel.: (650) 752-1700
                                               Fax: (650) 752-1800
20
21                                             ROPERS MAJESKI PC
                                               Todd A. Roberts (SBN 129722)
22                                             todd.roberts@ropers.com
                                               Martin D. Dioli (SBN 17277)
23                                             martin.dioli@ropers.com
                                               535 Middlefield Road, Suite 245
24                                             Menlo Park, CA 94025
25                                             Tel.: (650) 364-8200
                                               Fax: (650) 780-1701
26
27                                             *Attorneys for Defendants Centripetal Networks, Inc.,*
                                               *Steven Rogers and Jonathan Rogers*
28