MARC R. LEWIS (State Bar No. 233306)
KENNETH M. WALCZAK (State Bar No. 247389)
PETER C. SQUERI (State Bar No. 286249)
DANIEL JORDAN (State Bar No. 313543)
LEWIS & LLEWELLYN LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel.: (415) 800-0590
Fax: (415) 390-2127
Email: kwalczak@lewisllewellyn.com
        mlewis@lewisllewellyn.com
        psqueri@lewisllewellyn.com
        djordan@lewisllewellyn.com

*Attorneys for Plaintiff*
ALBERT RICHARDS

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ALBERT RICHARDS,<br><br>                Plaintiff,<br>v.<br><br>CENTRIPETAL NETWORKS, LLC, f/k/a CENTRIPETAL NETWORKS, INC.; CNI HOLDINGS, INC.; ALSOP LOUIE MANAGEMENT LLC; ALSOP LOUIE CAPITAL 2, L.P.; ALSOP LOUIE PARTNERS 2, LLC; OCEAN TOMO LLC; STEVEN ROGERS; JONATHAN ROGERS; and JOHN DOES 1-10,<br><br>                Defendants. | Case No. 4:24-cv-01065-HSG<br><br>**FIRST AMENDED COMPLAINT** |

LEWIS +
LLEWELLYN
LLP

**INTRODUCTION**

Plaintiff Albert Richards ("Richards") purchased Series A-2 preferred shares in Centripetal Networks, Inc. ("Centripetal").  Those shares and the associated Stock Purchase Agreement granted him certain rights and returns.  Defendants – Centripetal, its majority common stockholder Steven Rogers, his son Jonathan Rogers, the Alsop Louie entities, and Ocean Tomo – conspired to deprive Richards (and other preferred stockholders) of those rights and returns by engineering a fraudulent "squeeze-out" merger resulting in the conversion of all Centripetal preferred stock into common stock, without compensation.  Centripetal and the Rogers Defendants refused (and continue to refuse) to provide Richards with documents and information to which he is entitled, including the actual merger agreements and the certificates evidencing the securities into which his preferred stock was converted.

In total, Richards invested $1,000,000 in Centripetal.  He invested $500,000 in Series A-2 preferred shares purchased in 2014 and $500,000 in convertible notes, purchased in 2015 and 2016.  Centripetal was then a start-up cybersecurity company and a high-risk/high-reward opportunity.  Due to the risks, Richards's investments were structured as preferred stock and notes convertible into preferred stock, specifically to provide rights, preferences, and privileges senior to common stock.

Other investors invested larger sums in preferred and convertible securities.  Venture capital firm Alsop Louie owned all of the Series A preferred shares and that ownership comprised a majority of all the preferred shares (Series A and Series A-2) combined.  Under Centripetal's organizational documents and a stock purchase agreement, Alsop Louie's Series A ownership gave it additional preferential rights, including enhanced information rights and rights to approve (or prevent) certain types of corporate actions.

As Centripetal grew and navigated financing challenges, the Rogers defendants acted to enhance their control of, and economic stake, in Centripetal.  They did so at the expense of preferred shareholders including Richards, depriving them of the preferences and other benefits for which they

LEWIS +
LLEWELLYN ᴸᴸᴾ

bargained and paid.[1]

In February 2022, Centripetal's fortunes had improved significantly. Purporting to respond to some preferred stockholders' desire to cash out, the Rogers defendants (together comprising 100% of Centripetal's Board of Directors) conspired to squeeze out *all* preferred shareholders. They engineered a merger in which Centripetal became a wholly owned subsidiary of a new holding company, CNI Holdings, Inc. ("CNI Holdings"). In this scheme, all holders of preferred shares were forced to either sell their preferred shares at a fraudulently low price (in cash, or cash plus a new instrument that permitted limited participation in possible recoveries from certain litigation) or exchange each preferred share for one share of common stock in CNI Holdings. The CNI Holdings common stock does not provide any of the rights, privileges, preferences, or protections of the preferred stock. Converted preferred stockholders received no compensation for the loss of their rights, preferences, privileges, and other protections.

This was an unnecessarily complicated transaction. Centripetal could simply have offered to buy out existing preferred stockholders. Each stockholder could then have evaluated the adequacy of the offered price (if given accurate information about Centripetal's operations and prospects), and either accepted it or decided to hold onto that stockholder's preferred shares. Accepting the cash-out offer would have eliminated a significant portion of the "super" preferential rights Alsop Louie enjoyed.

But instead of offering cash buyouts, Centripetal and the Rogers defendants decided to eliminate *all* of the bargained-for rights, preferences, privileges, and protections of *all* of the preferred stockholders, and to do so without compensation. To accomplish this, they enlisted Series A shareholder Alsop Louie's help, by coercion. First Centripetal sued Alsop Louie and a cybersecurity company in which Alsop Louie had a significant investment. Then Centripetal agreed to drop the lawsuit in return for Alsop Louie's written consent to the squeeze-out merger. That consent made a vote of preferred stockholders a *fait accompli*. Alsop Louie received not only the

---

[1]

1   cash price offered to all preferred stockholders, which was artificially and fraudulently low, but also

2   relief – for themselves and for LookingGlass – from Centripetal's lawsuit.  No other preferred

3   stockholder received this additional compensation.

4        The cash-out option in the merger was set at an artificially, fraudulently low price that did

5   not remotely reflect Centripetal's true value.  Centripetal and the Rogers Defendants purported to

6   justify this price with ████████████████████████████████████████

7   ██████████████████████████████████████████████

8   ██████████████████████████████████████████

9   ███████████████████████████████████████████████

10  ████████████████████████████████████████████

11  ██████████████████████████████████████████

12  ███████████████████████████████████████████████████

13  ███████████████████████████████████████████

14  ███████████████████████████████████████████████

15  █████████████████████████████████████

16       Defendant Ocean Tomo then provided Centripetal a "fairness opinion" stating that the

17  merger was "fair to the Preferred Shareholders of Centripetal from a financial point of view".

18  Ocean Tomo did not appear to consider any inputs ████████████████████████████

19  ███████████████████████████████████████████████

20  ██████████████████████  Ocean Tomo's opinion did not acknowledge that preferred

21  stockholders who elected to receive CNI Holdings common stock would lose the preferred shares'

22  rights, preferences, privileges, and other protections without compensation, or that a share of CNI

23  Holdings common stock is inherently less valuable than a share of Centripetal preferred stock.

24       As a result, the squeeze-out merger forced Richards to choose – in a matter of days and

25  based on inadequate information – between accepting a fraudulently low valuation of his preferred

26  shares or accepting a downgrade of his investment from preferred shares to common shares of CNI

27  Holdings.  Seeking to minimize the damage he would suffer from this Hobson's Choice, Richards

28  elected the common stock route.

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

LEWIS +
LLEWELLYN
LLP

Defendants misrepresented and conspired to misrepresent to Richards (and other preferred holders), their true purpose in forcing the squeeze-out merger through, the circumstances under which Alsop Louie consented to the merger (effectively mooting any potential stockholder vote), the additional consideration provided to Alsop Louie in connection with the merger (relief from the LookingGlass lawsuit), and the falsity of the valuation on which the merger consideration was based. In so doing, and in completing the merger, Defendants violated federal securities laws, breached their fiduciary duties, and violated Delaware and California statutory and common law.

### THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff ALBERT RICHARDS is a 30-year veteran of the financial services industry, and the founder and Chief Executive Officer of Alambic Investment Management, LP. He resides in, and his principal place of business is in, Belvedere, California.

2.      Defendant CENTRIPETAL NETWORKS, LLC, formerly known as CENTRIPETAL NETWORKS, INC., is a cybersecurity company with its headquarters in Reston, Virginia. Centripetal has purposefully availed itself of the benefits of doing business in the State of California, including by conducting business with Richards and other California-based investors. This controversy arises out of Centripetal's contacts with Richards in California. Centripetal has not contested this Court's personal or subject matter jurisdiction in *Richards I*.

3.      Defendant CNI HOLDINGS, INC. is an entity formed on February 1, 2022. On information and belief, Centripetal Networks, Inc. is the parent entity of CENTRIPETAL NETWORKS, LLC.

4.      Defendant ALSOP LOUIE MANAGEMENT LLC is a Delaware limited liability company with its headquarters located at 943 Howard Street, San Francisco, California 94103. On information and belief, Alsop Louie Management is the corporate parent for Alsop Louie Capital 2, L.P. and Alsop Louie Partners 2, LLC.

5.      Defendant ALSOP LOUIE CAPITAL 2 LP is a Delaware limited partnership with its principal office at 50 Pacific Avenue, San Francisco, California 94111.

6.      Defendant ALSOP LOUIE PARTNERS 2 LLC is a Delaware limited liability company with its principal office at 943 Howard Street, San Francisco, California 94103. Alsop

LEWIS +
LLEWELLYN
LLP

1  Louie Partners 2, LLC. is the general partner of Alsop Louie Capital 2, L.P.

2      7.    The three Alsop Louie entities are referred to three collectively hereafter as "Alsop

3  Louie."  Alsop Louie was the sole Series A investor in Centripetal.  Alsop Louie invested in 2012

4  and had the right to appoint one director to Centripetal's Board of Directors.

5      8.    Defendant OCEAN TOMO is a limited-liability corporation based in Chicago,

6  Illinois, with an office in San Francisco.  Ocean Tomo bills itself as an expert in valuing intangible

7  assets and performing business valuations generally.

8      9.    Defendant STEVEN ROGERS is Centripetal's founder and was the majority owner

9  of Centripetal common stock.  He owns a majority of the voting stock of CNI Holdings.  Steven

10  Rogers has purposefully availed himself of the benefits of doing business in the State of California,

11  including by conducting business with Richards and other California-based investors.  This

12  controversy arises out of Steven Rogers's contacts with Richards in California.  Steven Rogers has

13  not contested this Court's personal or subject matter jurisdiction in *Richards I*.

14      10.    Defendant JONATHAN ROGERS is the Chief Operating Officer of Centripetal, and

15  Steven Rogers's son.  From July 2015 to June 2017, Jonathan Rogers was the Vice President of

16  Operations for Centripetal, and from May 2010 to July 2015, he was the company's Chief Financial

17  Officer.  At other times relevant to this complaint, he was Jonathan Rogers has purposefully availed

18  himself of the benefits of doing business in the State of California, including by conducting business

19  with Richards and other California-based investors.  This controversy arises out of Jonathan

20  Rogers's contacts with Richards in California.  Jonathan Rogers has not contested this Court's

21  personal or subject matter jurisdiction in *Richards I*.

22      11.    Defendants JOHN DOES 1-10 are others involved in the unlawful and improper

23  activities described in this Complaint.  The true names or capacities, whether individual, corporate,

24  or otherwise, of these persons are unknown to Richards.  Consequently they are referred to as John

25  Does 1 through 10.  Richards will seek leave to amend this complaint to show the unknown Doe

26  Defendants' true names and capacities when they are ascertained.

27      12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over

28  Plaintiff's claims under federal statutes and regulations, and diversity jurisdiction pursuant to 28

LEWIS +
LLEWELLYN
LLP

U.S.C. § 1332 over the claims Richards, a citizen of California, raises against individuals or entities based in states other than California. The amount in controversy far exceeds $75,000, exclusive of interest and costs, as set forth in the ensuing allegations. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims.

13.    Venue is properly laid in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in San Francisco.

## FACTUAL ALLEGATIONS

**Richards Purchases Series A-2 Preferred Shares and Convertible Promissory Notes**

14.    In June 2014 Richards bought $250,000 in Series A-2 preferred shares of Centripetal. In September 2014 he bought an additional $250,000 of Series A-2 preferred shares, raising his equity investment to $500,000.[2]

15.    This equity stake created a fiduciary relationship between Richards and the Directors and Officers of Centripetal, including many of the Defendants. As an investor, Richards was owed a fiduciary duty by Centripetal and each of the Rogers Defendants.

16.    In late 2015 Centripetal was short of funding, because a proposed B-Round of financing from cybersecurity private equity firm Option3 was delayed. To ease this funding shortage, Centripetal sought "bridge" financing.

17.    Richards bought a Convertible Promissory Note dated December 23, 2015 for $250,000. This note was to convert into Series B preferred shares if/when Centripetal issued such shares. Or, should the Series B offering fail, the note was to convert, at Richards's option, into other equity securities at a discount to the price at which Centripetal sold those securities (under specified conditions).

18.    Richards bought a second Convertible Promissory Note, with identical terms, dated April 12, 2016, for $250,000.[3] This brought Richards's total investment in Centripetal to

---

[2] Both of these investments were made through the Kawishiwi Partners Revocable Trust, a revocable trust set up by Richards and his wife, Roxanne Richards – both of whom are Trustees.

[3] Both Notes state that they have been purchased by "Millennium Trust Company, LLC, Custodian, FBO: Albert Richards, Roth IRA." Millennium Trust is simply the financial institution where

LEWIS +
LLEWELLYN LLP

1    $1,000,000, $500,000 in Series A-2 preferred stock and $500,000 in Convertible Notes due to

2    convert into preferred stock.

3    **Centripetal Defrauds Richards by Denying Him Opportunities to Convert His Notes Upon the**
     **Occurrence of Triggering Events**

4

5    19.    A separate complaint in this Court concerns Centripetal's actions, and those of

6    individual defendants Steven Rogers and Jonathan Rogers to defraud Richards by failing to notify

7    him upon the occurrence of triggering events, and by withholding material information, or providing

8    false and misleading information, about the financial condition of Centripetal, including its various

9    issuances of equity securities.  The Second Amended Complaint in that action spells out those

10   actions in detail.  *See Richards v. Centripetal et al.,* N.D. Case No. 4:23-CV-00145-HSG, Docket

11   No. 53 ("*Richards I*").

12                        **Centripetal's Early Fundraising**

13   20.    ████████████████████████████████████████

14   ████████████████████████████████████████████████

15   ██████████    That stock was purchased by a fund managed by Alsop Louie.  As the sole owner of

16   the Series A preferred stock, Alsop Louie enjoyed numerous benefits, including enhanced

17   information rights, the ability to appoint a Board Member, and the ability to approve and/or veto

18   certain corporate actions.

19   21.    At the time of the Alsop Louie investment, there were roughly 41 million common

20   shares outstanding, 40 million of which were owned by Steven Rogers.  According Centripetal's

21   Amended and Restated Voting Agreement, removal of Steven Rogers as President and CEO

22   required a majority vote of common shareholders.

23   22.    Throughout 2014 (and earlier) Alsop Louie had two representatives on Centripetal's

24   Board, William Crowell (Chairman) and Gilman Louie.  In May 2015, Joseph Addiego (another

25   Alsop Louie representative) replaced Gilman Louie on the Centripetal Board.

26   23.    Post the Alsop Louie investment, Centripetal funded its 2013-2015 cash needs

27   _____

28   Richards keeps the Roth IRA account used to purchase the Notes.  Richards was the owner of both
     Notes; Millennium Trust facilitated the purchase, as custodian of the IRA funds.

7

LEWIS +
LLEWELLYN
LLP

1    through the issuance of convertible notes (the "Series Notes") as well as Series A-2 preferred shares,

2    including Richards's $500,000 investment. ████████████████████████████████

3    ███████████████████████████████████████████████████████████████████████

4    ███████████████████████████████████████████████████████████████████████

5    ██████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████

7                              **Centripetal Does Bridge Financing**

8          24.    In July of 2015, Centripetal signed a term sheet for a $20 million B-Round preferred

9    stock offering in which Option3 would be lead investor.  While this round was initially planned to

10   close in the second half of 2015, it was delayed.  Centripetal secured bridge financing in the form of

11   notes convertible into Series B preferred shares when/if Centripetal issued those shares in the B-

12   round (or into other equity securities under specified circumstances).

13         25.    Option 3 initially bought convertible notes in late 2015 and early 2016.  As noted

14   above, Richards bought notes in December 2015 and April 2016, totaling $500,000 in principal.

15         26.    The closing of the B-Round was finally set for April 28, 2016, but it was derailed

16   when, rather than participating in the financing, Hudson Bay demanded repayment of its $3,000,000

17   Series Note.  While all of the other Series Notes were structured so as to either convert into the B-

18   Round prior to maturity or a new series of preferred stock at maturity, Hudson Bay had negotiated a

19   previously-undisclosed side letter allowing it to demand a cash redemption.  Centripetal did not have

20   the funds to repay Hudson Bay, and litigation ensued.

21         27.    ████████████████████████████████████████████████████████████

22   ██████████████████████████████████████

23   ███  ███████████████████████████████████████, and in late 2016,

24   Centripetal began to miss payroll, and the company also failed to pay the appropriate withholding

25   taxes to the U.S. government.

26         29.    In September of 2016, the entire board of Centripetal, other than Steven Rogers,

27   resigned.  Richards did not learn this had happened until after he became aware of the Hudson Bay

28   lawsuit on November 17, 2016.  By early 2017, Centripetal was near bankruptcy, with the Hudson

                                                8

LEWIS +
LLEWELLYN
LLP

Bay debt and lawsuit still looming.

30.     In April of 2017, Centripetal found a new investor, Douglas Smith, who purchased a $6 million convertible note with warrants attached, the note being secured with all of Centripetal's intellectual property.  This allowed Centripetal to repay Hudson Bay (this after an adverse court ruling), as well as giving it enough cash for immediate operations.

31.     The B-round never came to fruition, and other hoped-for funding rounds also failed to materialize in 2017 and 2018.  The company continued to exist by issuing additional convertible notes (with warrants attached) to Mr. Smith. █████████████████████████████████████████████████████████████████████████████████████████.

32.     In early 2019, Centripetal won a patent lawsuit against Keysight Technologies. While the exact details were not disclosed, █████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

33.     After two extensions, Richards's Notes matured on June 30, 2019.  Centripetal redeemed those notes under circumstances that are among the subjects of *Richards I*, the prior action filed by Richards against Centripetal.

**Option3 Converts Most of Their Notes and Redeems the Rest, in Autumn 2019**

34.     Option3 began to engage Centripetal about the possibility of converting their notes into equity – with Steven Rogers first mentioning it to Richards in an August 13, 2019 email.

35.     ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

36.     Being a Major Investor conferred significant benefits on Option3.  Major Investors are entitled to, amongst other information, i) annual financial statements within 120 days of year end, ii) quarterly financial statements within 45 days after each quarter, iii) a capitalization statement within 45 days of each quarter, iv) monthly unaudited income statements and balance sheets, within

9

30 days of month end, and v) budgets, business plans, and other similar information.  Major

Investors also have a right to participate, at their option, in any "New Issuance", as that term is

defined in the Investors' Rights Agreement. The existence of a Major Investor also created

significant benefits for Richards, as it created additional oversight for a highly conflicted

management team.

37.    Alsop Louie's Series A investment also entitled them to Major Investor status, and

they were specifically exempted from the "Competitor" designation in the Investors' Rights

Agreement in spite of being involved in similar businesses.[4]

38.    While it gained Major Investor status with its conversion, Option3 now alleges that

Centripetal has, among other things, denied it the information due, and also denied it the opportunity

to participate in future issuances of "New Securities".  Option3 filed three actions against

Centripetal, two in the Circuit Court for the County of Fairfax, Virginia and one in Chancery Court

in Delaware.  The first, filed on July 23, 2021 (Case No. 2021-10652), sought various financial and

other data that Option3 alleged it was entitled to as the result of its status as both a shareholder and a

Major Investor.  The second, filed on November 10, 2021 (Case No. 2021-15490), sought

"substantial damages" as a result of Centripetal's alleged failure to allow Option3 to participate in

future issuances of various securities.  The two suits were subsequently combined.  Option3's third

action against Centripetal alleges similar fraudulent actions with respect to the squeeze-out merger.

39.    On April 1, 2020, Steven Rogers, as the sole Board Member of Centripetal, granted

11,906,499 options to himself, and 2,433,738 options to his son Jonathan Rogers.  Much smaller

numbers of options were granted to other Centripetal employees, bringing the total number of

options outstanding to 45,998,466, a number in excess of the number of common shares outstanding.

**In 2020, Richards First Discovers Some of Defendants' Illegal Acts and Omissions**

40.    As an investor in Centripetal's Series A-2 preferred shares (in addition to his Note

investments), Richards received various investor disclosures, financial statements, and other

materials from Centripetal.

---

[4] Alsop Louie was, for example, an investor in LookingGlass.

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

41.     On October 7, 2020, Richards learned that Centripetal had obtained a $3.3 ***billion*** award from its lawsuit against Cisco.  (That judgment was later vacated on a finding of a judicial conflict of interest, and returned for a new trial, which remains in various stages of appeal.)

42.     From October 7 through November 6, 2020, Richards asked Steven Rogers and Jonathan Rogers about the potential impact of the damages award on the value of his existing investment, and on the dilution of his A-2 preferred shares.  As part of those conversations, Richards repeatedly requested a cap table.

43.     On November 6, 2020, Jonathan Rogers sent Richards a cap table dated October 31, 2020.  That cap table raised numerous red flags for Richards, as Centripetal now disclosed the existence of 76.7 million warrants included in "Total Outstanding Shares" a dramatic increase over the 16 million warrants not shown in Total Outstanding Shares in October 2017.    Meanwhile, the number of options outstanding had ballooned to 46,098,442, substantially more than the 41,725,371 common shares outstanding.

44.     Based on these red flags, and on Jonathan Rogers's reluctance to disclose much about the warrants in their email exchange, in November 2020 Richards began to suspect for the first time that Defendants had concealed prior triggering events for his Notes and omitted or obscured equity securities from prior financial documents and investor reports. *See Richards I*, Second Amended Complaint.

45.     Richards's investigation into Centripetal's actions gained a new impetus when, in January of 2022, Centripetal told Richards of its intent to effect the fraudulent transaction that is the subject of this Complaint.

**In April 2021, an Option3-Commissioned Valuation Study Values Centripetal at $4 Billion**

46.     In April of 2021, Option3 commissioned a valuation of Centripetal by a "highly reputable valuation firm" according to an Option3 Complaint.  According to this Complaint, "Option3's valuation firm valued [Centripetal] at between $2 billion and $6 billion, taking into consideration current and expected patent infringement claims by [Centripetal] against several high-profile public companies", this resulting a mid-point valuation of $4 billion, after an assessment of the upside and downside scenarios.  This valuation discounted the Cisco award, anticipating

11

LEWIS +
LLEWELLYN
LLP

1   reduction on appeal, and it allocated substantial value to Centripetal's patent claims against several

2   other competitors.

3               **Centripetal Sues Alsop Louie and LookingGlass**

4       47.    On September 14, 2021, Centripetal filed suit against Alsop Louie and LookingGlass

5   Cyber Solutions.  Centripetal brought claims for Patent Infringement, Breach of Contract, Breach of

6   Fiduciary Duty and Abetting Breach of Fiduciary Duty.  It listed five "Asserted Patents" that

7   LookingGlass allegedly infringed.  Unredacted allegations in this Complaint include:

8           36  LookingGlass has infringed and continues to infringe one or more
9           claims of each of the Asserted Patents by engaging in acts that constitute
            infringement under 35 U.S.C. §271 …

10          43. In September of 2019, much to Centripetal's surprise, LookingGlass
11          released its first product offering that utilized Centripetal's patented
            technology, despite being on notice of Centripetal and its patented
12          technology.

13          44. In October of 2020, Mr. Louie became the CEO of LookingGlass.
14          … (redacted)…

15          46. Centripetal is informed and believes that Alsop Louie aided and
            abetted in Mr. Louie's violations of his obligations to Centripetal.
16
            47. LookingGlass has willfully infringed each of the Asserted Patents.
17          Centripetal is informed and believes that LookingGlass had knowledge
            of the Asserted Patents through various channels and despite its
18          knowledge of Centripetal's patent rights, engaged in egregious behavior
            warranting enhanced damages.
19

20      48.    The first ten causes of action in this lawsuit allege patent infringement, either direct

21   or indirect, on each of Centripetal's Asserted Patents.

22      49.    The Eleventh Cause of Action is for "Mr. Louie's Breaches of Fiduciary Duties".  Six

23   paragraphs in this cause of action are either partially or fully redacted.  Unredacted allegations

24   include:

25          207.  (redacted)…  Mr. Louie's actions benefited himself (as
            LookingGlass was a portfolio company of Alsop Louie for which Mr.
26          Louie was involved), and also benefited Alsop Louie (where Mr. Louie
            is a named partner), to the great detriment of Centripetal.
27

28

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

LEWIS +
LLEWELLYN
LLP

208.    (redacted)… As a result of becoming a direct competitor of Centripetal using Centripetal's patented technology, Mr. Louie, as a managing member and named partner of Alsop Louie, stands to gain material financial or other benefit derived from LookingGlass.

212.    Centripetal did not discover Mr. Louie's breach of fiduciary duties until Centripetal learned that he became LookingGlass's Chief Executive Officer in October of 2020, which was shortly after LookingGlass's release of its first product making the unauthorized use of Centripetal's patented technology.

214.    Centripetal has incurred and continues to incur damages and irreparable injury as a direct and proximate result of Mr. Louie's breach of his fiduciary duties.

50.    The Twelfth Cause of Action is for "Mr. Louie's Breach of Confidentiality Obligations".  One paragraph in this cause of action is fully redacted.  Unredacted allegations include:

Centripetal is informed and believes that Mr. Louie breached his confidentiality obligations in, *inter alia*, advising, guiding and directing LookingGlass' business, which has resulted in LookingGlass changing its business model and becoming a direct competitor of Centripetal, as well as an infringer of Centripetal's Patents.

51.    The Thirteenth Cause of Action is for "Alsop Louie Capital and Alsop Louie Partners's Breach of Confidentiality Obligation", and is similar in its allegations to the Twelfth Cause of Action.

52.    The Prayer for Relief in this Complaint asked for, amongst other items, i) a preliminary and permanent injunction with regard to patent infringement, ii) an award of damages for said patent infringement, iii) treble damages, iv) costs and reasonable attorneys' fees, post judgement and prejudgment interest, v) damages, including attorney fees and costs relating to Mr. Louie's, Alsop Louie Capital's and Alsop Louie Partners' alleged misconduct.

**In December 2021, Centripetal Dismisses Its Case Against LookingGlass and Alsop Louie.**

53.    On December 13, 2021, Centripetal suddenly dismissed its multi-pronged lawsuit against LookingGlass Cyber Solutions and Alsop Louie.

54.    The abrupt dismissal of the patent infringement claims after Centripetal achieved a

13

LEWIS +
LLEWELLYN
LLP

1  multi-million-dollar settlement against Keysight and won a multi-billion-dollar award against Cisco

2  (now being retried) is particularly curious.  The claims against Alsop Louie also appeared

3  meritorious—yet Centripetal was willing to abandon them even before any of the defendants had

4  even filed an answer.

5      55.    The above facts and the events that followed suggest that Jonathan Rogers and

6  Steven Rogers conspired with Alsop Louie, who participated in and supported a sham transaction in

7  which Alsop Louie exited its investment in Centripetal at a knock-down price, while also providing

8  Centripetal cover to fraudulently force the other preferred shareholders to either accept the same,

9  artificially-low price or lose their preferred shareholder status (a lose-lose situation).

10     56.    The benefits to Alsop Louie were clear—not only did they rid themselves of a

11 potentially expensive and certainly embarrassing lawsuit, but they also appear to have rid a major

12 portfolio company of a potentially crippling patent infringement lawsuit.  Those benefits, of course,

13 didn't accrue to the *other* preferred shareholders who were forced to participate in the upcoming

14 transaction, including Richards.

15                    **Centripetal Notifies Richards of the Proposed Squeeze-Out Merger**

16     57.    On January 23, 2022, Jonathan Rogers emailed Richards a "Shareholder Notice

17 Letter" that outlined an upcoming merger transaction involving Centripetal.  This letter, which was

18 notably signed by "Centripetal Networks, Inc.", outlined a transaction in which each share of the

19 Centripetal's Series A or Series A-2 stock outstanding will be converted into the right to received, at

20 the election of the holder, either:



(c) common stock in the new holding company which will then own
100% of the equity of the Company.

14

58.    In addition to the offer for preferred shares described above, "(e)ach share of the Company's common stock outstanding immediately prior to the merger will be converted into the right to receive common stock in such new holding company".

59.    According to this letter, "the Company has been in discussion with a number of preferred stock investors regarding the potential for a transaction in which they and other stockholders … could exit that investment for significant cash consideration".  Additionally, "(t)wo of the largest holders of the Company's preferred stock have agreed to support the merger transaction offering these alternatives".

60.    A merger transaction was not required to accomplish these goals.  Centripetal could just as easily have offered a share buyback under the same terms.  With this "merger" however, Centripetal was able to force preferred shareholders who didn't want to be bought out into exchanging their preferred shares for common shares of CNI Holdings without any compensation for their loss of rights.

61.    As of the date of this letter, the merger agreement had not been completed, as the letter stated "(w)e expect that in the coming days the merger agreement providing for the consideration alternatives described above will be finalized, approved by the Company's Board of Directors and approved through written consent by both the holders of a majority of our common stock and preferred stock voting together as a single class and by the holders of a majority of our preferred stock …"

62.    In terms of fairness:

> Prior to the Board voting on whether to approve the final merger agreement the Board expects to receive opinions from two different valuation firms (which have already expressed that view orally on a preliminary basis) to the effect that the consideration to be received in the merger is fair from a financial point of view to the stockholders of the Company unaffiliated with management.

63.    ██████████████████████████████████████████████████

███████████████ Richards replied to the email from Defendant Jonathan Rogers ████████

███████████████████████████

64.    After an initial examination, Richards emailed Jonathan Rogers again, with the

LEWIS +
LLEWELLYN
LLP

following questions / comments:

████████████████████████████████

████████████████████████████████

████████████████████████████████

65.     Jonathan Rogers replied in an email on January 26, 2022 with a number of comments, the most relevant to this Complaint being that "(t)The full merger agreement *will be provided* in finalized and approved form, …" ███████████████████

████████████████████████████████████████

████████████████████████████████████████

█████

66.     After some back-and-forth with Richards on a variety of merger issues, on January 28, 2022, Jonathan Rogers replied to some of Richards's information requests stating (in part) that (emphasis added):

The COI for the new holding company *will be provided* in the data-████████████████████████████████

████████████████████████████████

████████. The fairness opinion has been concluded and will be entered shortly.

67.     In this same email Richards also asked: "(w)as there a reason this was structured as a merger and not just a stock buyback?".  Jonathan Rogers replied: "Yes. There are a number of reasons that this is structured as a merger. Considerations included rationalizing our capital structure and governance and providing liquidity options for our stockholders."  These liquidity options could have easily been provided in a buyback transaction, whereas "rationalizing our capital structure and governance" were clearly designed to benefit Steven Rogers as the majority owner of the common

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

shares by fraudulently depriving the preferred shareholders of their preferred rights.

68.    In a follow-up email on January 31, 2022, Richards expressed frustration with the process, including the following comments:

69.    After some further email exchanges on other issues, Richards then sent another January 31, 2022 email to Jonathan Rogers,

a.

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

LEWIS +
LLEWELLYN
LLP

70.     In another email dated January 31, Richards asked:

[REDACTED]

71.     Jonathan Rogers effectively ignored all of these last questions, providing only a comment from Barkworth as to [REDACTED]

[REDACTED]

72.     Jonathan Rogers's replies, as well as his lack of answers, incensed Richards, who replied in a January 31, 2022 email lambasting [REDACTED] Jonathan Rogers replied, saying, in part "I do not believe your points are offered in good faith or that your criticism on the separate valuation analyses by intellectual property experts has any merit. … At this point we have provided adequate information in good faith for you to make your election decision."

73.     Richards replied to Jonathan Rogers at 3:14 PM, apologizing for the tone of his comments, reiterating that he felt the time frame under which he was forced to do his analysis was unreasonable, and repeating his request for answers to his previous queries.  Rogers continued to ignore most of these questions.

74.     [REDACTED]

75.     [REDACTED]

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

LEWIS +
LLEWELLYN
LLP

1  ██████████████████████████████████████████████████████████

2  ███████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████

4  ███████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████ ▌

6  ██    ███████████████████████████████████████████████████

7  ██████████████████████████████████████████████████████

8  ███████████████████████████

9  ██    ████████████████████████████████████████████████████████

10  █████████████████████████████████████████████████████

11  ████████████████████████████ They intended this not only to induce preferred stockholders

12  to accept the cash offer, but also to dissuade all preferred stockholders from exercising appraisal

13  rights.

14      78.    Defendant Ocean Tomo provided an opinion specifically related to the merger, based

15  on inputs and assumptions that it knew, or knowingly and recklessly declined to discover, were

16  unreasonable and inconsistent with material facts.

17      79.    As individuals, Jonathan Rogers and Steven Rogers had incentives to buy out the

18  preferred shareholders at as low a price as possible, as well as to eliminate the preferred shareholder

19  rights of any owners of preferred shares who elected not to redeem.  Their actions, and the inputs

20  they provided (and failed to provide) ██████████████████ and the Ocean Tomo opinion,

21  indicate that this was the path that they were taking.  By doing so, both Defendants violated their

22  fiduciary duties to shareholders (made all the more overt by the fact that they were the only two

23  Board members of the company).

24      80.    Further, by not disclosing ████████████████████████ their own

25  personal incentives as common stockholders, Steven Rogers and Jonathan Rogers omitted material

26  facts in conjunction with a securities transaction.

27  _____

28  [5] This analysis also provides for a 30% discount due to lack of marketability, a discount that is expressly prohibited by Section 13.01 of Delaware's Model Business Corporation Act.

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

LEWIS +
LLEWELLYN
LLP

81.    Richards emailed Jonathan Rogers again on February 1, 2020 with questions about the availability of documents in the Cisco litigation, with a postscript reminding Jonathan Rogers that multiple question sets remained outstanding, with Richards saying: "PS – as I'm sure you're aware, there are still a few of my "question emails" outstanding. Apologies, but I'm trying to be a [sic] thorough as possible while still working within the time constraints".

82.    Without adequate information regarding Centripetal's financial projections, ███████, █████████████████████████████████, Richards was nonetheless forced to make his election in the tight timescale demanded by Centripetal.  Hence, on February 1, 2022 Richards emailed Jonathan Rogers (cc'ing Barkworth, Steven Rogers and Peter Smith of Kramer Levin), with his election form selecting the common share option as opposed to any sort of buyout.  Richards again reminded Centripetal that there were multiple questions about the deal outstanding, saying:

> Meanwhile, I am continuing to try to make sense of everything. In that vein, I believe there are still some "question emails" out there that I would appreciate a response on, even if you decide that your preferred reaction is "I'm not going to tell you", as then I would at least know I can stop chasing

83.    Richards finished his email with the following:

████████████████████████████████████
████████████████████████████████████
█████████████████

84.    ████████████████████████████████████
████████████████████████████████ ████████████████
██████████████████████████

85.    ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████

86.    Richards submitted some additional questions to Centripetal, and on February 2, he

LEWIS +
LLEWELLYN
LLP

emailed Jonathan Rogers (copying Steven Rogers, Paul Barkworth, and Peter Smith of Kramer Levin) asking him to confirm receipt of the election form.  Included in this email was another request for Centripetal to answer the various questions Richards had posed.  Barkworth replied, confirming receipt, while the request for additional answers to Richards's questions was again ignored.

87.    On February 10, 2022, Jonathan Rogers emailed Richards another letter regarding the merger transaction, this letter beginning with "This letter will provide an update and additional information regarding the Company's pending merger transaction."  Once again, the letter was signed "Centripetal Networks, Inc.", again implying that it was being written on behalf of the Board of Directors in the exercise of their fiduciary duties to shareholders.

88.    The letter included an update of the supposedly independent valuations ascribed to the company, saying:

> ███████████████████████████████
> ██     the Board of Directors, as anticipated, has received in final form
> the opinion of a second independent valuation firm, Ocean Tomo, to the
> effect that the consideration to be received in the Merger is fair from a
> financial point of view to the holders of the Company's preferred stock.
> A copy of that fairness opinion is being added to the data room.

89.    ████████████████████████████████████████
███████████████████████████

90.    The purported "fairness opinion" explicitly stated that essentially all meaningful assumptions and projections were provided by Centripetal – *i.e.*, Steven Rogers and Jonathan Rogers (in their conflicted roles).  That effectively reduced the "fairness" analysis to one of checking the ████████████████████████████████████████████ ████████████████████████████████   Ocean Tomo's opinion is at best misleading, because it is based on inputs and assumptions that, among other things, ignore key facts such as Centripetal's patent claims of which Ocean Tomo must have been aware.

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

91.    Centripetal's letter also stated that:

The Board of Directors has now voted to approve the Merger Agreement. ███████████████████████████████████████
███████████

92.    This "Board" consisted of two highly conflicted individuals, *i.e.*, Steven Rogers and Jonathan Rogers.

93.    In another effort to get the preferred shareholders to accept their lowball buyout price, the letter also highlighted a Bloomberg article which stated that "there has never in history been a patent judgement in excess of $1 billion affirmed".

94.    According to the letter, Centripetal now expected the merger to become effective on Monday, February 14, 2022.  Accordingly, the company extended the Election Form deadline to Sunday February 13, 2022.

95.    On February 11, 2022, Richards received an automated email ████████████
███████████████████████████████████████████████████████████████
███████████████████████████████.  Richards emailed Jonathan Rogers asking for an emailed copy of the merger agreement ███████████████████████████
███████████████████████ Jonathan Rogers didn't reply.

96.    On February 14, 2022, Richards emailed Jonathan Rogers (et al), noting that █████
███████████████████████████████████████████████████████████████
███████████████████████:

In looking through the merger agreement over the weekend, and I couldn't find the Annexes, in particular:

Annex A – Surviving Corporation Certificate of Incorporation
Annex B – Surviving Corporation Bylaws
Annex C – Form of Letter of Transmittal (which I believe you sent in this email)
Annex D – For of Deposit Account Control Agreement

I also presume you saw my previous request for an emailed copy of the Merger Agreement. If it's possible to get these by email, too, I would appreciate it. I'm afraid I'm Old School, and I still find reading from paper much easier than reading from the screen.

LEWIS +
LLEWELLYN
LLP

1    97.    Jonathan Rogers did not reply.

2    98.    The February 14, 2022 email (as well as a follow-up email) also included questions

3    on how to handle a supposed "Letter of Transmittal" associated with the merger.

4    99.    Richards then called Jonathan Rogers asking about the Letter of Transmittal, which

5    he memorialized in a February 24, 2022 email in which Jonathan Rogers said nothing was required.

6    Richards then left voicemails for both Smith and Barkworth, which he again followed up with a

7    memorializing email, again asking for clarification on the Letter of Transmittal.  Finally, on

8    February 25, 2022 Jonathan Rogers replied saying Richards **did** need to fill out the Letter of

9    Transmittal, omitting the asked-for certificate information as Richards had never been issued

10    certificates with his Series A-2 purchases.

11    100.    Richards filled out the form as requested and emailed it to Centripetal on February

12    28, 2022.  Richards than asked for confirmation that the form had been received, and on March 3,

13    2022 Jonathan Rogers replied, saying:

14
15        No problems that I can see with your LoT. We'll record the shares for
        the Kawishi partners revocable trust for now and followup regarding
        certificates and publishing one for you for the full holding. When we're
16        ready to send that we'll reconfirm your address for a fedex.

17    101.    On March 4, 2022, counsel for Centripetal emailed Richards a "Centripetal Notice"

18    letter stating that the Merger became effective on February 22, 2022.  The first paragraph of this

19    letter reads:

20
        Pursuant to Sections 228 and 262(d)(2) of the General Corporation Law
21        of the State of Delaware (the "DGCL"), you are hereby notified that the
        merger (the "Merger") of CNI Merger Sub, Inc., a Delaware
22        corporation ("Merger Sub"), with and into Centripetal Networks, Inc.,
        a Delaware corporation (the "Company"), pursuant to the Agreement
23        and Plan of Merger (the "Merger Agreement"), dated as of February 22,
        2022, by and among CNI Holdings, Inc., a Delaware corporation
24        ("Parent"), Merger Sub, and the Company, was approved and such
        Merger Agreement adopted by written consent of the holders of a
25        majority of the outstanding stock of the Company entitled to vote
        thereon as of February 22, 2022, and such Merger became effective on
26        February 22, 2022.

27

28

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

LEWIS +
LLEWELLYN
LLP

102. This letter also stated that any stockholder who did not vote in favor of the Merger or consent thereto in writing had appraisal rights. ████████████████████████████

████████████████████████████

103. On March 22, 2022, Richards sent an email to Smith with the form attached, saying:

> Please see my attached form. I was wondering about the merger docs, and obviously didn't fully read your last email as I thought it only had to do with appraisal rights.

104. Richards then forwarded that letter to Jonathan Rogers, cc'ing Steven Rogers, saying:

> FYI, I sent this in to Kramer Levin last night. I was wondering when I might get the merger docs, and I obviously didn't read far enough into his email as I thought it only had to do with appraisal rights.
>
> Meanwhile, might you know the timing on sending our stock certificates?

105. ████████████████████████████████████████

████████████████████████████

106. On May 27, 2022, Richards emailed Steven Rogers and Jonathan Rogers, cc'ing Smith, saying:

> Jonathan and Steven:
>
> I've been reading the filings and see you're quite busy, but could you please tell me when I might receive copies of the merger documents and my stock certificates?
>
> Thanks, and best of luck with those Cisco rulings.

107. None of the recipients replied.

108. On June 17, 2022, Richards forwarded his May 27, 2022 email to the same recipients (i.e., Steven Rogers and Jonathan Rogers, with a cc to Smith), asking again:

> Could you please respond to this request? I haven't heard from you in a while, and I'm still awaiting merger documents and stock certificates.

109. Once again, none of the recipients replied.

110. On August 18, 2022, Richards's counsel sent a letter to Steven Rogers requesting

24

LEWIS +
LLEWELLYN
LLP

books and records under Section 220 of the DGCL.  Corporate counsel replied with objections and no books, records, or other information.

**Alsop Louie's and Steven Rogers's Obligations Under the Investor Rights Agreement**

111.    The Amended and Restated Voting Agreement from June 2014 is a valid contract signed by, amongst others, Alsop Louie, Steven Rogers, and Richards.

112.    That agreement obligates Alsop Louie to appoint one member to the Board, it obligates Steven Rogers in his position as owned of the majority of Key Holder (as defined therein) stock to appoint one member to the Board, and it further obligates Steven Rogers, in his position as a majority owner of all stock in Centripetal, to appoint an additional four members to the Board.

113.    Section 6.8 covers any amendments, terminations, or waivers with respect to this contract, and reads (in part):

> **6.8 Consent Required to Amend, Terminate or Waive.** This Agreement may be amended or terminated and the observance of any term hereof may be waived (either generally or in a particular instance and either *retroactively* or prospectively) only by a written instrument executed by (a) the Company; (b) the Key Holders holding a majority of the Shares then held by the Key Holders who are then providing services to the Company as directors, officers, employees or consultants; and (c) the holders of a majority of the shares of Common Stock issued or issuable upon conversion of the shares of Preferred Stock held by the Investors (voting as a single class and on an as-converted basis). Notwithstanding the foregoing:
>
> (d) Subsection 1.2(a) of this Agreement shall not be amended or waived without the written consent of Alsop Louie Capital 2, L.P., …
>
> The Company shall give prompt written notice of any amendment, termination or waiver hereunder to any party that did not consent in writing thereto. …

114.    Richards has never received any notice of any amendment, termination, or waiver of any of the terms in the Amended and Restated Investor Rights Agreement.

115.    Section 1.2, including Section 1.2(a) reads, in relevant part (emphasis added):

> **1.2 Board Composition.** Each Stockholder <u>agrees to vote, or cause to be voted</u>, all Shares owned by such Stockholder, or over which such Stockholder has voting control, from time to time and at all times, in whatever manner as shall be necessary to ensure that at each annual or

25

special meeting of stockholders at which an election of directors is held or pursuant to any written consent of the stockholders, the following persons shall be elected to the Board:

**(a)** One person designated by Alsop Louie Capital 2, L.P. (the **"Series A Director"**), which individual shall initially be Gilman Louie, for so long as such Stockholder and its Affiliates continue to own beneficially at least 4,000,000 shares of Common Stock of the Company (including shares of Common Stock issued or issuable upon conversion of Series A Preferred Stock), which number is subject to appropriate adjustment for all stock splits, dividends, combinations, recapitalizations and the like.

(b) For so long as the Key Holders[6] hold at least a majority of shares of Common Stock (as adjusted for any stock splits, stock dividends, recapitalizations or the like), one individual designated by the holders of a majority of the Shares of Common Stock, which individual shall initially be William Crowell;

(d) Four individuals not otherwise an Affiliate (as defined below) of the Company or of any Investor, each of whom is mutually acceptable to the other members of the Board, three of whom shall initially be Robert Flores, Robert Gourley and Prescott Winter.

116.    Section 3 ("Voting") of the Amended and Restated Certificate of Incorporation, dated June 12, 2014, contains the following provisions:

3.3  Series Preferred Protective Provisions.  At any time when at least 4,000,000 shares of Series Preferred Stock (subject to appropriate adjustment in the event of any Recapitalization) are outstanding, the Corporation shall not, either directly or indirectly by amendment, merger, consolidation or otherwise, do any of the following without (in addition to any other vote required by law or the Certificate of Incorporation) the written consent or affirmative vote of the holders of at least a majority of the then outstanding shares of Series Preferred, given in writing or by vote at a meeting, consenting or voting (as the case may be) separately as a class, and any such act or transaction entered into without such consent or vote shall be null and void ab initio, and of no force or effect.

---

[6] Schedule B identifies Rogers as owning the vast majority of Key Holder shares.

26

LEWIS +
LLEWELLYN
LLP

3.3.1 liquidate, dissolve or wind-up the business and affairs of the Corporation, effect any merger or consolidation or any other Deemed Liquidation Event, each a ("Transaction") or consent to any of the foregoing; provided, however, that if both (x) the total consideration payable in such Transaction for each share of Series A Preferred Stock equals or exceeds the applicable Maximum Participation Amount, and (y) the holders of Series A Preferred Stock shall receive such consideration in cash, or securities listed on a national securities exchange that are immediately saleable without limitations or restriction, then the forgoing consent or vote by class shall not be required if the subject Transaction was approved by at least 2/3 of the members of the Board of Directors;

3.3.7 increase or decrease the authorized number of directors constituting the Board of Directors;

SIXTH: Subject to any additional vote required by the Certificate of Incorporation, the number of directors of the Corporation shall be determined in the manner set forth in the Bylaws of the Corporation.

**The Merger Closes, Aided and Abetted by Alsop Louie, Causing Richards Harm**

117.    Centripetal's lawsuit against LookingGlass (an Alsop Louie portfolio company) and Alsop Louie (and its unexpected dismissal shortly after being filed) is inexorably intertwined with the sham merger transaction. In Centripetal's March 4, 2022 letter announcing that the transaction had closed on February 22, 2022, Centripetal explicitly stated:

The Company and its counsel engaged in extended negotiations with the largest holder of the Company's preferred stock and its counsel regarding the terms of definitive documentation, including among other things the final form of Merger Agreement, the form of Letter of Transmittal, and a form of Transaction Support Agreement reflecting, among other things, that preferred stockholder's commitment to provide its written consent in favor of the Merger and take certain other actions in connection with the Merger.

118.    The letter then states:

Ocean Tomo, LLC, to the effect that the consideration to be received in the Merger is fair from a financial point of view to the holders of the Company's preferred stock.

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

LEWIS +
LLEWELLYN
LLP

1   119.   ████████████████████████████████████████

2   █████████████████████████████████████████

3   █████████████████████████████████████████████

4   ██████████████████████████████████████████████

5   ███████████████████████████

6   120.   Yet Defendants stated that only the second opinion, *i.e.*, the Ocean Tomo "fairness

7   opinion," that was "received in final form". That opinion, however, had so many disclaimers that it

8   was essentially reduced to an analysis ██████████████████████████████████

9   █████████████████████████████████████████████

10  ████████████████████████████████ Opinion on the fairness of

11  the conversion of the preferred stock to common stock was also notably absent.

12  121.   Alsop Louie also proactively participated in the transaction that deprived other

13  preferred shareholders of their preferred status, as the March 4, 2022 letter goes on to state:

> Thereafter, the Company continued negotiations with the largest holder
> of its preferred stock regarding definitive documentation. On February
> 18, 2022, the Merger Agreement and related matters were further
> approved by the Company's Board of Directors. On February 22, 2022,
> the Merger Agreement was finalized and approved and adopted by the
> written consent of the holders of a majority of the Company's common
> and preferred stock voting together as a single class and by the holders
> of a majority of the Company's preferred stock (which also constituted
> approval by a majority of the shares of the Company's capital stock not
> held by members of the Company's management or their affiliates), the
> Merger Agreement and related documents were executed and delivered,
> the Certificate of Merger was filed with the Delaware Secretary of State
> and the Merger became effective.

22  (Emphasis added.)

23  122.   Having most of the preferred shares outstanding, Alsop Louie's favorable vote was

24  necessary for preferred shareholder approval. Upon information and belief, Alsop Louie accepted

25  the knock-down price and exited its position as a Centripetal shareholder.

26  123.   ████████████████████████████████████████

27  ████████████████████████████████████ the only reason that Alsop Louie

28  would have accepted an unrealistically low price is that Alsop Loouie received additional

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

LEWIS +
LLEWELLYN
LLP

compensation – *e.g.*, Centripetal's unexplained dismissal of its lawsuit against Gilman Louie, Alsop Louie, and Alsop Louie portfolio company LookingGlass.

124.    Alsop Louie could always have negotiated for this transaction to be a buyback of those shares that preferred shareholders wanted to sell – thereby avoiding the situation where preferred shareholders who wanted to remain invested in Centripetal could have retained their preferred status.  But they chose not to.  Instead, they aided and abetted Centripetal's management in their breach of fiduciary duty, first by approving an artificially low buyout price (when they were achieving benefits outside of that price), and then by approving the stripping of the rights of preferred shareholders for no consideration.

125.    In sum, Defendants failed Richards at every turn in the fraudulent squeeze-out merger process, and violated their fiduciary duties owed to all shareholders.  Their conduct in deliberately and repeatedly withholding key information from Richards (while simultaneously discussing the merger with Alsop Louie, to coerce its consent), and by agreeing to a merger price that significantly undervalued the Company and was unfair to preferred stockholders like Richards, is egregious and gives rise to liability under state and federal law.

## FIRST CLAIM FOR RELIEF
### (Breach of Fiduciary Duty under California law—against Centripetal, Steven Rogers, and Jonathan Rogers)

126.    Richards realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs as though fully set forth herein.

127.    A fiduciary relationship existed between Richards and Centripetal and each of its officers and directors.  As a preferred shareholder, Richards relied on Defendants to comply with their legal obligations and to provide full, accurate, and truthful information to allow Richards to act as an informed stockholder and to exercise his rights response to and arising from the proposed squeeze-out merger.

128.    Richards also relied on Defendants to refrain from self-dealing in a manner detrimental to the company and his investments—for example, not forcing him to elect among three bad alternatives, each of which was unfair, or to make such an election based on false, misleading, or omitted information, and to his detriment.

LEWIS +
LLEWELLYN
LLP

129.    Defendants Centripetal, Steven Rogers, and Jonathan Rogers knowingly and voluntarily undertook to act on behalf of and for the benefit of Centripetal's shareholders, including Richards.

130.    Defendants owed fiduciary duties to Richards under California common law, including the duty to act with the utmost good faith in the best interests of Centripetal shareholders, including Richards, and to refrain from self-dealing.  California Corporations Code Section 309 (emphasis added) obligates a corporate director to perform their duties "in good faith, in a manner such director believes to be in the best interests of the corporation ***and its shareholders*** and with such care, including reasonable inquiry, as an ordinarily prudent person would use under similar circumstances."

131.    As alleged herein above, Defendants failed to act as reasonable fiduciaries would have acted under the same or similar circumstances.

132.    As alleged herein above, Defendants also failed to act in the best interests of the preferred shareholders, including Richards, and instead acted in their own self-interest, subordinated Richards's interests to their own interests and engaged in numerous activities to the detriment of Richards, and did so without Richards's knowledge or consent.

133.    As alleged herein above, Defendants undertook direct actions and omissions which caused harm to Richards as a shareholder and caused Richards to lose the right to make a fair return on his investment, as he would have if he possessed full and accurate information.

134.    Richards was harmed by Defendants' actions and was damaged in an amount to be proved at trial.

**SECOND CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty under Delaware law—against Centripetal, Steven Rogers, and Jonathan Rogers)**

135.    Richards realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs as though fully set forth herein.

136.    Defendants owed Centripetal's stockholders, including Richards, fiduciary duties of care and loyalty.  By virtue of their positions as directors and officers of Centripetal and their exercise of control and ownership over the business and corporate affairs of Centripetal, Defendants

LEWIS +
LLEWELLYN
LLP

1    Rogers have, and at all relevant times had, the power to control and influence and did control and
2    influence and cause Centripetal to engage in the practices complained of herein.

3        137.    Defendants were required to: (i) use their ability to control and manage the Company
4    in a fair, just, and equitable manner, and (ii) act in furtherance of the best interests of the Company
5    and its stockholders, including Richards.

6        138.    Defendants failed to meet those requirements, causing harm to Richards and
7    damaging him in an amount to be proved at trial.

8        139.    Defendants Steven Rogers and Jonathan Rogers also breached their fiduciary duties
9    of loyalty and care by engineering, spearheading, and agreeing to the squeeze-out merger—for the
10   primary purpose of inflating the value of common shares, of which they own the majority, at the
11   expense of holders of preferred shares, including Richards.

12       140.    Defendants Steven Rogers and Jonathan Rogers also breached their fiduciary duties
13   of loyalty and care by forcing holders of preferred shares, including Richards, to accept either (a) a
14   sham merger price, based on a flawed valuation generated through "management inputs" that
15   significantly undervalued the Company; or (b) an uncompensated loss of the rights, privileges, and
16   benefits arising from their stocks' status as preferred.

17       141.    Defendants Steven Rogers and Jonathan Rogers also breached their fiduciary duties,
18   including their duty of disclosure, by forcing Richards to make a decision on the squeeze-out merger
19   on an extremely abbreviated timeline, while deliberately and repeatedly withholding key
20   information, and by providing false or misleading information regarding the purported "fairness" of
21   the transaction.

22       142.    Moreover, Defendants Steven Rogers and Jonathan Rogers breached their fiduciary
23   duties by engaging in a coercive strategy with Centripetal's largest preferred stockholder, Alsop
24   Louie, to secure its consent to the merger and obviate the need to conduct a fair and fully-informed
25   vote of preferred stockholders.

26       143.    The squeeze-out merger was not entirely fair to Richards and other preferred
27   stockholders because it undervalued Centripetal and deprived them of rights inherent to their
28   preferred shares without compensation.

31

LEWIS +
LLEWELLYN
LLP

144.     By reason of the foregoing acts, practices, and courses of conduct, Defendants have failed to lawfully discharge their fiduciary obligations. As a result of Defendants' breaches of fiduciary duty, Richards has been harmed by, among other things, extinguishment of the rights afforded to him as a Series A-2 preferred stockholder.

145.     By failing to fulfill their fiduciary duties to provide fair merger consideration (and given this is a conflicted transaction, said price is clearly subject to Delaware's Entire Fairness Review), Defendants fraudulently forced Richards into incurring economic losses, including foisting on him securities inherently less valuable that those he was forced to relinquish in the merger, and compelling Richards to incur the costs of endeavoring to unwind the merger and achieve a fair result for stockholders.

**THIRD CLAIM FOR RELIEF**
**(Aiding and Abetting Breach of Fiduciary Duty—against Alsop Louie and Ocean Tomo)**

146.     Richards realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs as though fully set forth herein.

147.     Defendants Alsop Louie and Ocean Tomo knew that Centripetal, Steven Rogers, and Jonathan Rogers were breaching their fiduciary duty to Richards.

148.     Defendant Alsop Louie actively participated in the breaches of fiduciary duty by consenting to the terms of the squeeze-out merger in response to Centripetal's filing, and then dismissal of, the LookingGlass lawsuit.  Alsop Louie did so knowing that other holders of preferred stock would not receive any similar benefit or be told of the arrangement between Centripetal and Alsop Louie.  They otherwise gave substantial assistance and encouragement to Centripetal, Steven Rogers, Jonathan Rogers, and Paul Barkworth.

149.     Defendant Ocean Tomo aided and abetted the breaches of fiduciary duty by proffering a "fairness opinion" that was neither fair nor based on complete information.

150.     The conduct by each of Alsop Louie and Ocean Tomo was a substantial factor in causing harm to Richards.

/ /

/ /

**FOURTH CLAIM FOR RELIEF**
**(15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5—against all Defendants)**

151.    Richards realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs as though fully set forth herein.

152.    Section 10(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78j(b), makes it unlawful to "use or employ, in connection with the purchase or sale of any security … any manipulative or deceptive device in contravention of such rules and regulations as the [SEC] may prescribe."

153.    Rule 10b-5, promulgated by the Securities and Exchange Commission to enforce Section 10(b) and codified at 17 C.F.R. § 240.10b-5, makes it illegal, in connection with the purchase or sale of any security: "(a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made ... not misleading, or[,] (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person[.]"

154.    Defendants violated these provisions to Richards's detriment.

155.    The conversion of Richards's Series A-2 preferred stock into common shares of CNI Holdings constituted a "sale" of that preferred stock and a purchase of those common shares for purposes of Section 10(b) and Rule 10b-5.

156.    Defendants made untrue statements of material, and omitted material facts necessary under the circumstances to keep the statements that were made from being misleading, in connection with the purchase and sale of securities.

157.    Defendants Centripetal, CNI Holdings, Steven Rogers, Jonathan Rogers, and Ocean Tomo made or participated in the making of, among others, the following actionable misstatements:

    a.    "[W]e have provided adequate information in good faith for you to make your election decision."  (False.)

    b.    "[T]wo of the largest holders of the Company's preferred stock have agreed to support the merger transaction offering these alternatives".  (Misleading.)

    c.    "[T]he consideration to be received in the merger is fair from a financial point of

33

LEWIS +
LLEWELLYN
LLP

1   view to the stockholders of the Company unaffiliated with management."

2   (Misleading.)

3       d.   "[T]he Board of Directors, as anticipated, has received in final form the opinion

4          of a second independent valuation firm, Ocean Tomo, to the effect that the

5          consideration to be received in the Merger is fair from a financial point of view to

6          the holders of the Company's preferred stock."  (False AND Misleading.)

7       e.   ████████████████████████████████████████████

8          ████████████████████████████████████████████

9          ██████████████  (False.)

10      f.   ██████████████████████████████████████

11         ████████████████████████████████████████████

12         ████  (False.)

13      g.   Every representation by Ocean Tomo that the merger was fair to preferred

14         shareholders or that its opinions were based on complete information.

15         (Misleading.)

16      158.   Defendants knew that these and other misstatements were false and/or misleading

17  when they made them.

18      159.   Defendants Centripetal, Holdings, Jonathan Rogers, Steven Rogers, and Ocean Tomo

19  knowingly misled Richards by omitting to inform Richards of:

20      a.   the fact that Alsop Louie was induced to agree to the low price for its preferred

21         stock by Centripetal's willingness to dismiss (and not re-file) its lawsuit against

22         Alsop Louie and LookingGlass as, in effect, additional merger consideration that

23         provided no benefit to other Centripetal stockholders (and, actually reduced the

24         value of those other holders' shares, to the extent the Alsop Louie/LookingGlass

25         lawsuit was meritorious);

26      b.   the benefits to Jonathan Rogers and Steven Rogers individually of buying out

27         preferred holders at an artificially low price and eliminating the preferences and

28         other rights and protections attributable to the remaining preferred stock for no

34

LEWIS +
LLEWELLYN
LLP

consideration;

c.  the extent of Jonathan Rogers's and Steven Rogers's prospective ownership of Holdings (giving effect to, among other things, options granted to them);

d.  ███████████████████████████████████████████████

███████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

h.  other intellectual property assets of Centripetal, including potential valuable patent infringement claims against third parties; and

i.  the fact that Option3 had obtained (and informed Centripetal about) an analysis of Centripetal's value, less than a year before the merger, which revealed a value more than ten times larger than the value proposed in the merger.

160.    Defendants Centripetal, CNI Holdings, Steven Rogers, and Jonathan Rogers employed devices, schemes, and artifices to defraud Richards and otherwise engaged in acts, practices, and courses of business that operated as a fraud and deceit upon Richards by, among other things, initiating [the LookingGlass lawsuit] against Alsop Louie and LookingGlass in order to coerce Alsop Louie's consent to the squeeze-out merger, and dismissing that lawsuit to induce Alsop Louie to give that consent.

161.    Defendant Alsop Louie also employed those devices, schemes, and artifices, and engaged in those acts, practices, and courses of business, by consenting to the squeeze-out merger at an artificially low price, knowing that it was receiving consideration, in the form of relief from a potentially damaging lawsuit, that other holders of Centripetal preferred stock were not receiving, knowing that this arrangement was not being disclosed to other stockholders, and knowing that

35

LEWIS + LLEWELLYN LLP

Centripetal's provision of that consideration to Alsop Louie could reduce the value of the surviving corporation for preferred holders who made the common-stock election in the squeeze-out merger.

162.    All Defendants used or caused the use of an instrumentality of interstate commerce, such as telephones or internet-connected computers to make the foregoing and other misstatements, to employ the foregoing and other devices, schemes, and artifices, to engage in the foregoing and other fraudulent and deceitful acts, practices, and courses of business, and to effect the purchase and sale of securities comprising the conversion of Richards's preferred shares of Centripetal into shares of CNI Holdings common stock.

163.    Defendants' fraudulent devices, schemes, artifices, and practices in violation of Section 10(b) and Rule 10b-5 forced Richards to sell his preferred shares at a time and on terms that he did not want and did not agree to.

164.    Richards justifiably relied on Defendants' untrue and misleading statements of material fact (including the omission of facts necessary to make Defendants' statements not misleading) in, among other things, selecting the common-stock election and not exercising appraisal rights within the 20-day period provided by Delaware law.

## FIFTH CLAIM FOR RELIEF
### (15 U.S.C. § 78n(3) and 17 C.F.R. § 240.14e-3—against all Defendants)

165.    Richards realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs as though fully set forth herein.

166.    Section 14(e) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78n(3), prohibits (i) making any untrue statement of material fact, omitting to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading and (ii) engaging any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in favor of any such offer, request, or invitation.

167.    Centripetal's and CNI Holdings's proposed squeeze-out merger was a tender offer for the Centripetal's preferred stock and their solicitation of elections among the three consideration options was a solicitation of security holders in favor of that offer.

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

LEWIS +
LLEWELLYN
LLP

168.    As alleged in detail above, Defendants Centripetal, CNI Holdings, Steven Rogers, Jonathan Rogers, and Ocean Tomo provided information in connection with the squeeze-out merger, which those Defendants knew or recklessly failed to discover contained material omissions and misstatements.

169.    Defendants Centripetal, CNI Holdings, Steven Rogers, Jonathan Rogers, and Ocean Tomo made or participated in the making of, among others, made the following actionable misstatements:

a.  "[W]e have provided adequate information in good faith for you to make your election decision."  (False.)

b.  "[T]wo of the largest holders of the Company's preferred stock have agreed to support the merger transaction offering these alternatives".  (False, as to preferred stockholders.)

c.  "[T]he consideration to be received in the merger is fair from a financial point of view to the stockholders of the Company unaffiliated with management."  (Misleading.)

d.  "[T]he Board of Directors, as anticipated, has received in final form the opinion of a second independent valuation firm, Ocean Tomo, to the effect that the consideration to be received in the Merger is fair from a financial point of view to the holders of the Company's preferred stock."  (False AND Misleading.)

e.   (False.)

f.  ████████████████████████████ (False.)

g.  Every representation by Ocean Tomo that the merger was fair to preferred shareholders or that its opinions were based on complete information. (Misleading.)

37

LEWIS +
LLEWELLYN
LLP

170.    Defendants knew that these and other misstatements were false and/or misleading when they made them.

171.    Defendants Centripetal, Holdings, Jonathan Rogers, Steven Rogers, and Ocean Tomo knowingly misled Richards by omitting to inform Richards of:

 a. the fact that Alsop Louie was induced to agree to the low price for its preferred stock by Centripetal's willingness to dismiss (and not re-file) its lawsuit against Alsop Louie and LookingGlass as, in effect, additional merger consideration that provided no benefit to other Centripetal stockholders (and, actually reduced the value of those other holders' shares, to the extent the Alsop Louie/LookingGlass lawsuit was meritorious);

 b. the benefits to Jonathan Rogers and Steven Rogers individually of buying out preferred holders at an artificially low price and eliminating the preferences and other rights and protections attributable to the remaining preferred stock for no consideration;

 c. the extent of Jonathan Rogers's and Steven Rogers's prospective ownership of Holdings (giving effect to, among other things, options granted to them);

 d. [redacted]

 h. other intellectual property assets of Centripetal, including potential valuable patent infringement claims against third parties; and

 i. the fact that Option3 had obtained (and informed Centripetal about) an analysis of

Centripetal's value, less than a year before the merger, which revealed a value more than ten times larger than the value proposed in the merger.

172.    Defendants knowingly or with deliberate recklessness omitted that material information, causing their other statements in connection with the merger to be materially incomplete and therefore misleading.

173.    Defendant Alsop Louie engaged in fraudulent, deceptive, or manipulative acts or practices by consenting to the squeeze-out merger at an artificially low price, knowing that it was receiving consideration, in the form of relief from a potentially damaging lawsuit, that other holders of Centripetal preferred stock were not receiving, knowing that this arrangement was not being disclosed to other stockholders, and knowing that Centripetal's provision of that consideration to Alsop Louie could reduce the value of the surviving corporation for preferred holders who made the common-stock election in the squeeze-out merger.

174.    All Defendants used or caused the use of an instrumentality of interstate commerce, such as telephones or internet-connected computers to make the foregoing and other misstatements, to employ the foregoing and other devices, schemes, and artifices, to engage in the foregoing and other fraudulent and deceitful acts, practices, and courses of business, and to effect the purchase and sale of securities, namely the conversion of Richards's preferred shares of Centripetal into shares of CNI Holdings common stock.

175.    During the relevant time period, Defendants disseminated the false and misleading statements in lieu of statements that would permit Richards to make an informed choice among the options for consideration in connection with the merger.  Defendants knew or recklessly disregarded that they failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

176.    The statements prepared, reviewed, and/or disseminated by Defendants misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders, the intrinsic value of Centripetal, and facts necessary to discern the potential conflicts of interest faced by certain Defendants.

177.    In so doing, Defendants made untrue statements of material facts and omitted

39

LEWIS +
LLEWELLYN
LLP

material facts necessary to make the statements that were made not misleading in violation of

Section 14(e) of the Exchange Act.  By virtue of their positions within Centripetal and/or roles in the

process and in the preparation of the materials in support of the squeeze-out merger, Defendants

were aware of this information and their obligation to disclose this information.

178.     The omissions and incomplete and misleading statements are material in that a

reasonable stockholder would consider them important in deciding among the three options provided

by Defendants in connection with the merger and not challenging the validity of the transaction

based on, among other things, the tainted consent provided by Alsop Louie.

179.     The misrepresentations and omissions were material to Richards.

180.     Richards justifiably relied on Defendants' untrue and misleading statements of

material fact (including the omission of facts necessary to make Defendants' statements not

misleading) in, among other things, selecting the common-stock election and not exercising

appraisal rights within the 20-day period provided by Delaware law.

181.     Rule 14e-1 (17 C.F.R §14e-1) prohibits a person making a tender offer from (among

other things) holding the tender offer open for less than twenty business days from the date the

tender offer is first published or sent to security holders.

182.     Centripetal first purported to notify its preferred stockholders of the proposed

squeeze-out merger, and their need to choose whether to accept cash, rights to certain litigation-

related payments, or CNI Holdings common stock, by a letter dated January 23, 2022.  That letter

stated that such holders must make their choice by February 2, 2022.

183.     While the January 23, 2022 letter may not have constituted true publication of the

offer, February 2, 2022 is fewer than 20 business days after January 23, 2022, so even if the January

23 letter did constitute publication or sending, the tender offer violated Rule 14e-1.

184.     Rule 14e-1 also prohibits a person making an tender offer from "[e]xtend[ing] the

length of a tender offer without issuing a notice of such extension by press release or other public

announcement, which notice shall include disclosure of the approximate number of securities

deposited to date and shall be issued no later than … 9:00 a.m. Eastern time, on the next business

day after the scheduled expiration date of the offer.  Centripetal and Holdings purported to extend

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

1  the tender offer period to February 13, 2022, but did not make an announcement of that fact to

2  affected stockholders until February 10, 2022.

3      185.    Under Rule 14e-1, the Centripetal defendants' casual and ambiguous treatments of

4  deadlines constituted fraudulent, deceptive or manipulative acts or practices within the meaning of

5  section 14(e).  The Centripetal defendants knew of the time pressure they were imposing on

6  Centripetal's stockholders, and were actively stalling Richards's requests for information during this

7  period.  They acted with scienter.

8      186.    Richards was damaged by the short time frame and the Defendants' failure and, in

9  some cases, obdurate refusal, to provide material information necessary to make the statements

10  Defendants made not misleading.  Among other things, he was forced to make an election to receive

11  common stock that he might not otherwise have made.

12              **SIXTH CLAIM FOR RELIEF**

13  **(Constructive Fraud—against Centripetal, Steven Rogers, and Jonathan Rogers)**

14      187.    Richards realleges and incorporates by reference the allegations set forth in each of

15  the preceding paragraphs as though fully set forth herein.

16      188.    A fiduciary relationship existed between Richards and Defendants.

17      189.    Richards entrusted Centripetal and its officers and directors, including those named

18  herein as Defendants, with his investment money; Richards relied on Defendants to comply with

19  their legal obligations and to provide full, accurate, and truthful information to allow Richards to act

20  as an informed shareholder and to exercise his rights in connection with the squeeze-out merger.

21      190.    Defendants knowingly and voluntarily undertook to act on behalf of and for the

22  benefit of Richards.

23      191.    Defendants owed fiduciary duties to Richards, including the duty to act with the

24  utmost good faith in the best interests of Richards.

25      192.    As alleged herein above, Defendants possessed information material to Richards's

26  interests relating to the finances of Centripetal, and to the purposes, circumstances, and special terms

27  (for Alsop Louie) of the squeeze-out merger.

28

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

LEWIS +
LLEWELLYN
LLP

193.    As alleged herein above, Defendants knew or should have known that this information was material to Richards's interest as a preferred shareholder.

194.    As alleged herein above, Defendants failed to disclose this material information to Richards, and affirmatively made, or participated in the making of, false and misleading statements to him.

195.    Richards would have acted differently and would not have been damaged if Defendants had not breached their duties, had not made false representations, and had not omitted to inform Richards of material facts known to them, or material facts they should have known.

196.    Richards was harmed by Defendants' actions and was damaged in an amount to be proved at trial.

197.    Defendants' acts and omissions were substantial factors in causing Richards harm.

### SEVENTH CLAIM FOR RELIEF
#### (Concealment—against Centripetal, Steven Rogers, and Jonathan Rogers)

198.    Richards realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs as though fully set forth herein.

199.    A fiduciary relationship existed between Richards and Defendants.  Defendants owed fiduciary duties to Richards as a preferred shareholder, including the duty to act with the utmost good faith in the best interests of Richards.

200.    Richards entrusted Centripetal and its officers and directors, including those named herein as Defendants, with his investment money; Richards relied on Defendants to comply with their legal obligations and to provide full, accurate, and truthful information to allow Richards to act as an informed investor and to exercise his rights as guaranteed by the Notes.

201.    Defendants knowingly and voluntarily undertook to act on behalf of and for the benefit of Richards.

202.    As alleged herein above, Defendants had exclusive knowledge of material facts and intentionally concealed, suppressed, and failed to disclose facts to Richards relating to the squeeze-out merger, which harmed Richards's interests and subordinated his interests to the interests of Defendants.

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

LEWIS +
LLEWELLYN LLP

203.    As a result, Richards did not know of material facts relating to his preferred shares, the finances of Centripetal, the squeeze-out merger, and Defendants' own actions that harmed Richards's interests and subordinated his interests to the interests of Defendants.

204.    As alleged herein above, had Defendants disclosed the concealed facts, Richards would have acted differently and would not have been harmed.

205.    Richards was harmed by Defendants' actions and was damaged in an amount to be proved at trial.

206.    Defendants' acts and omissions were substantial factors in causing Richards harm.

**EIGHTH CLAIM FOR RELIEF**
**(Negligent Misrepresentation—against all Defendants)**

207.    Richards realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs as though fully set forth herein.

208.    As alleged herein above, Defendants made representations to Richards regarding his investments with Centripetal, and the company's finances, and the squeeze-out merger.

209.    Defendants Centripetal, CNI Holdings, Steven Rogers, Jonathan Rogers, and Ocean Tomo made or participated in the making of, among others, made the following actionable misstatements:

    a.    "[W]e have provided adequate information in good faith for you to make your election decision."  (False.)

    b.    "[T]wo of the largest holders of the Company's preferred stock have agreed to support the merger transaction offering these alternatives".  (False, as to preferred stockholders.)

    c.    "[T]he consideration to be received in the merger is fair from a financial point of view to the stockholders of the Company unaffiliated with management." (Misleading.)

    d.    "[T]he Board of Directors, as anticipated, has received in final form the opinion of a second independent valuation firm, Ocean Tomo, to the effect that the consideration to be received in the Merger is fair from a financial point of view to

43

LEWIS +
LLEWELLYN
LLP

1    the holders of the Company's preferred stock." (False AND Misleading.)

2       e. ████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████

4    ███████████████     (False.)

5       f. ████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████

7    ████     (False.)

8       g. Every representation by Ocean Tomo that the merger was fair to preferred

9          shareholders or that its opinions were based on complete information.

10         (Misleading.)

11    210.    Defendants knew that these and other misstatements were false and/or misleading

12    when they made them.

13    211.    Defendants Centripetal, Holdings, Jonathan Rogers, Steven Rogers, and Ocean Tomo

14    knowingly misled Richards by omitting to inform Richards of:

15       a. the fact that Alsop Louie was induced to agree to the low price for its preferred

16          stock by Centripetal's willingness to dismiss (and not re-file) its lawsuit against

17          Alsop Louie and LookingGlass as, in effect, additional merger consideration that

18          provided no benefit to other Centripetal stockholders (and, actually reduced the

19          value of those other holders' shares, to the extent the Alsop Louie/LookingGlass

20          lawsuit was meritorious);

21       b. the benefits to Jonathan Rogers and Steven Rogers individually of buying out

22          preferred holders at an artificially low price and eliminating the preferences and

23          other rights and protections attributable to the remaining preferred stock for no

24          consideration;

25       c. the extent of Jonathan Rogers's and Steven Rogers's prospective ownership of

26          Holdings (giving effect to, among other things, options granted to them);

27       d. ████████████████████████████████████████████████████████

28    ███████████████████

44

LEWIS +
LLEWELLYN
LLP

e. ████████████████████████████████████████

████████████████████████████████████████████

██████████████

█████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████;

h. other intellectual property assets of Centripetal, including potential valuable

patent infringement claims against third parties; and

i. the fact that Option3 had obtained (and informed Centripetal about) an analysis of

Centripetal's value, less than a year before the merger, which revealed a value

more than ten times larger than the value proposed in the merger.

212. Defendants knowingly or with deliberate recklessness omitted that material

information, causing their other statements in connection with the merger to be materially

incomplete and therefore misleading.

213. Defendants had no reasonable ground for believing the representations to be true

when they were made.

214. Defendants intended Richards to rely on their misrepresentations.

215. Richards reasonably relied on Defendants' misrepresentations.

216. As alleged herein above, Richards would have acted differently and would not have

been harmed, but for Defendants' misrepresentations.

217. Richards was harmed by Defendants' misrepresentations and was damaged in an

amount to be proved at trial.

218. Defendants' misrepresentations, and Richards's reliance thereupon, were substantial

factors in causing Richards harm.

/ /

/ /

/ /

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG

LEWIS +
LLEWELLYN LLP

**NINTH CLAIM FOR RELIEF**
**(Fraud – Intentional Misrepresentation—against Centripetal, Steven Rogers and Jonathan Rogers)**

219.    Richards realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs as though fully set forth herein.

220.    As alleged herein above, Defendants made representations to Richards regarding his investments with Centripetal, the company's finances, and the squeeze-out merger.

221.    Defendants Centripetal, CNI Holdings, Steven Rogers, Jonathan Rogers, and Ocean Tomo made or participated in the making of, among others, made the following actionable misstatements:

  a.   "[W]e have provided adequate information in good faith for you to make your election decision."  (False.)

  b.   "[T]wo of the largest holders of the Company's preferred stock have agreed to support the merger transaction offering these alternatives".  (False, as to preferred stockholders.)

  c.   "[T]he consideration to be received in the merger is fair from a financial point of view to the stockholders of the Company unaffiliated with management." (Misleading.)

  d.   "[T]he Board of Directors, as anticipated, has received in final form the opinion of a second independent valuation firm, Ocean Tomo, to the effect that the consideration to be received in the Merger is fair from a financial point of view to the holders of the Company's preferred stock."  (False AND Misleading.)

  e.   ███████████████████████████████████
       ███████████████████████████████████
       ████████████  (False.)

  f.   ███████████████████████████████
       ███████████████████████████████
       ███  (False.)

LEWIS +
LLEWELLYN
LLP

g.  Every representation by Ocean Tomo that the merger was fair to preferred

shareholders or that its opinions were based on complete information.

(Misleading.)

222.    Defendants knew that these and other misstatements were false and/or misleading when they made them.

223.    Defendants Centripetal, Holdings, Jonathan Rogers, Steven Rogers, and Ocean Tomo knowingly misled Richards by omitting to inform Richards of:

a.  the fact that Alsop Louie was induced to agree to the low price for its preferred

stock by Centripetal's willingness to dismiss (and not re-file) its lawsuit against

Alsop Louie and LookingGlass as, in effect, additional merger consideration that

provided no benefit to other Centripetal stockholders (and, actually reduced the

value of those other holders' shares, to the extent the Alsop Louie/LookingGlass

lawsuit was meritorious);

b.  the benefits to Jonathan Rogers and Steven Rogers individually of buying out

preferred holders at an artificially low price and eliminating the preferences and

other rights and protections attributable to the remaining preferred stock for no

consideration;

c.  the extent of Jonathan Rogers's and Steven Rogers's prospective ownership of

Holdings (giving effect to, among other things, options granted to them);

d.  ███████████████████████████████████████████

███████████████

███████████████████████████████████████████

███████████████████████████████████████████████

██████████

███████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

47

LEWIS +
LLEWELLYN
LLP

h.   other intellectual property assets of Centripetal, including potential valuable

patent infringement claims against third parties; and

i.   the fact that Option3 had obtained (and informed Centripetal about) an analysis of

Centripetal's value, less than a year before the merger, which revealed a value

more than ten times larger than the value proposed in the merger.

224.   Defendants knew the representations were false or misleading when made, and/or

they were made recklessly and without regard for their truth.

225.   Defendants intended Richards to rely on their misrepresentations.

226.   Richards reasonably relied on Defendants' misrepresentations.  Specifically, he relied

on the presentation of two options for the "squeeze-out" merger – accept a low price or accept

common shares in lieu of his preferred shares – both of which were presented as "fair" based on,

█████████████████████████ Ocean Tomo valuations.  Indeed, Richards had no choice but to

rely on those options, as Defendants gave him no other options.

227.   As alleged herein above, Richards would have acted differently and would not have

been harmed, but for Defendants' misrepresentations.

228.   Richards was harmed by Defendants' misrepresentations and was damaged in an

amount to be proved at trial.

229.   Defendants' misrepresentations, and Richards's reliance thereupon, were substantial

factors in causing Richards harm.

230.   Defendants' conduct as alleged herein, was unconscionable, fraudulent, oppressive,

malicious and done intentionally or in conscious disregard of Richards's rights and in order to

further their own financial self-interest at Richards's expense so as to justify an award of punitive

damages.

**TENTH CLAIM FOR RELIEF**
**(Aiding and Abetting Fraud—against Alsop Louie and Ocean Tomo)**

231.   Richards realleges and incorporates by reference the allegations set forth in each of

the preceding paragraphs as though fully set forth herein.

232.   Defendants Alsop Louie and Ocean Tomo knew that Centripetal, Steven Rogers and

48

LEWIS +
LLEWELLYN
LLP

1    Jonathan Rogers made intentional misrepresentations to Richards constituting fraud.

2        233.    Defendants Alsop Louie and Ocean Tomo gave substantial assistance and

3    encouragement to Centripetal, Steven Rogers, and Jonathan Rogers.

4        234.    The conduct by each of Alsop Louie and Ocean Tomo was a substantial factor in

5    causing harm to Richards.

6                        **ELEVENTH CLAIM FOR RELIEF**

7                **(Fraudulent Inducement—against all Defendants)**

8        235.    Richards realleges and incorporates by reference the allegations set forth in each of

9    the preceding paragraphs as though fully set forth herein.

10       236.    Defendants fraudulently induced Richards to exchange his preferred shares of

11   Centripetal for common stock in CNI Holdings, to the detriment of Richards.

12       237.    Defendants' representations in connection with the squeeze-out merger, as detailed

13   above, were false.

14       238.    Defendants knew those representations were false, or they were reckless about the

15   truth of those representations.

16       239.    Defendants intended for Richards to rely on their misrepresentations.

17       240.    Richards did in fact rely on Defendants' misrepresentations.

18       241.    Richards was harmed, and continues to suffer harm, as a result of the fraudulently

19   supported squeeze-out merger.

20       242.    Had Defendants not made the fraudulent misrepresentations, Richards would have

21   acted differently and not suffered harm.

22       243.    Richards was harmed by Defendants' misrepresentations and was damaged in an

23   amount to be proved at trial.

24       244.    Defendants' misrepresentations, and Richards's reliance thereupon, were substantial

25   factors in causing Richards harm.

26       245.    Defendants' conduct as alleged herein, was unconscionable, fraudulent, oppressive,

27   malicious and done intentionally or in conscious disregard of Richards's rights and in order to

28   further their own financial self-interest at Richards's expense so as to justify an award of punitive

                                           49

LEWIS +
LLEWELLYN

1    damages.

2                    **TWELFTH CLAIM FOR RELIEF**

3    **(Unjust Enrichment—against Centripetal, Alsop Louie, Steven Rogers, and Jonathan Rogers)**

4        246.    Richards realleges and incorporates by reference the allegations set forth in each of

5    the preceding paragraphs as though fully set forth herein.

6        247.    Richards purchased shares of Series A-2 Preferred Stock, on the condition that he

7    receive the associated benefits specified in Centripetal's Certificate of Incorporation and in the

8    Stock Purchase Agreement.

9        248.    By denying Richards the benefit of his preferred shares, Defendants unjustly

10    enhanced the value of their investments in Centripetal and resulting shares of CNI Holdings

11    common stock and increased their control over the business of Centripetal.  As a result of their

12    unlawful acts and omissions, Defendants received economic and other benefits at the expense of

13    Richards.

14        249.    Defendants' retention of those benefits at the expense of Richards is unjust.

15        250.    As a direct and proximate result of the allegations above, Defendants have been

16    unjustly enriched at the expense of Richards in an amount to be proved at trial.

17                    **THIRTEENTH CLAIM FOR RELIEF**

18    **(Violation of Corporations Code § 25401—against Centripetal)**

19        251.    Richards realleges and incorporates by reference the allegations set forth in each of

20    the preceding paragraphs as though fully set forth herein.

21        252.    As alleged herein above, Defendants made numerous untrue statements of material

22    fact and omitted to state material facts in inducing Richards to alienate his preferred shares in

23    exchange for common stock.

24        253.    Defendants' investments in Centripetal included purchases of securities.

25        254.    Defendants intended Plaintiff to rely on their representations and intended to induce

26    Richards to purchase the securities, retain his investments in Centripetal, and agree to the squeeze-

27    out merger.

28        255.    Richards reasonably relied on the representations in exchanging his preferred shares

LEWIS +
LLEWELLYN
LLP

1  for common stock.

2  256.    Richards was harmed by Defendants' misrepresentations and was damaged in an

3  amount to be proved at trial.

4  257.    Defendants' misrepresentations, and Richards's reliance thereupon, were substantial

5  factors in causing Richards harm.

6  **FOURTEENTH CLAIM FOR RELIEF**
**(Violation of Corporations Code § 25504.1—against all Defendants)**

7

8  258.    Richards realleges and incorporates by reference the allegations set forth in each of

9  the preceding paragraphs as though fully set forth herein.

10  259.    California Corporations Code § 25504.1 imposes liability jointly and severally upon

11  any person who materially assists in any violation of Corporations Code Section 25401.

12  260.    As alleged herein above, each Defendant materially assisted the other Defendants in

13  making numerous untrue statements of material fact and omitting to state material facts, to induce

14  Richards to alienate his preferred shares in exchange for common stock.

15  261.    Defendants' investments in Centripetal included purchases of securities.

16  262.    Defendants intended Plaintiff to rely on their representations and intended to induce

17  Richards to purchase the securities, retain his investments in Centripetal, and agree to the squeeze-

18  out merger.

19  263.    Richards reasonably relied on the representations in exchanging his preferred shares

20  for common stock.

21  264.    Richards was harmed by Defendants' misrepresentations and was damaged in an

22  amount to be proved at trial.

23  265.    Defendants' misrepresentations, and Richards's reliance thereupon, were substantial

24  factors in causing Richards harm.

25  266.    Richards has no adequate remedy at law.

26  / /

27  / /

28  / /

51

LEWIS +
LLEWELLYN LLP

**FIFTEENTH CLAIM FOR RELIEF**
**(Violation of Delaware General Corporations Law Sections 144, 228, 232, 251, and 262—**
**against Centripetal, Steven Rogers, and Jonathan Rogers)**

267.    Richards realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs as though fully set forth herein.

268.    Because of the conflicts of interest, self-dealing and other malfeasance detailed above, Defendants failed to comply with the Delaware General Corporations Law provisions requiring timely statutory notice to shareholders (8 Del. C. § 262), sufficient written consent by shareholders (8 Del. C. § 228), disclosure of material facts concerning the directors' relationships and interests in the merger transaction (8 Del. C. § 144(a)(2)), and disclosure of who received, or would receive, consideration in connection with the merger (8 Del. C. § 251).

269.    Richards has suffered harm as a direct result of these violations.

270.    The Merger Agreement fails to comply with Delaware law because, among other things, it does not reflect the consideration provided to Alsop Louie (relief from the LookingGlass lawsuit).  As a result, it is null and void.

271.    Finally, the Merger Agreement is also null and void because Centripetal failed to abide by the corporate formalities contained in its Certificate of Incorporation, when reducing the size of the Centripetal Board of Directors to two individuals.

272.    Centripetal's bylaws provide that directors may take action at a meeting at which a quorum is present and that a quorum consists of majority of "the exact number of directors fixed from time to time by the Board of Directors pursuant to the Certificate of Incorporation."  Richards is informed and believes that, in February 2022, the number of directors fixed by appropriate corporate action was at least five (of which Series A preferred holders were entitled to elect one, voting as a class).

273.    Certificate of Incorporation Section 3.3.7 prohibits any increase or decrease in the authorized number of directors without a class vote of a majority of the Series Preferred.  "Series Preferred" consists of both Series A and Series A-2, together as a single class.  Richards was not notified of a meeting of the Series Preferred holders to vote on a reduction of the authorized number after the mass resignation of directors in 2016.  And he was not notified of written consent by a

52

1    majority of the Series Preferred holders in lieu of such a meeting – notice that the DGCL and

2    Centripetal's Certificate of Incorporation would have required Centripetal to provide Richards

3    "promptly" had a majority of the holders of the Series Preferred consented in writing.

4         274.    In the absence of a validly effected reduction in the size of the board, Steven and

5    Jonathan Rogers did not constitute a quorum of directors, no meeting at which they purported to

6    take action could be considered "quorate," and no action could be taken at such a meeting.

7    Similarly, the unanimous written consent of a number of directors inadequate to comprise a quorum

8    – even though they are all the directors – cannot be valid.  This means that, not only was the merger

9    not validly authorized – and is therefore ineffectual – but also that other actions taken by the Board,

10   including granting stock options to the Rogers defendants and converting certain Series Notes into

11   Series A-2 preferred stock, may also be invalid.

12        275.    Richards has no adequate remedy at law for the Delaware General Corporations Law

13   violations.

14
                          **SIXTEENTH CLAIM FOR RELIEF**
15   **(Violation of Delaware General Corporations Law Sections 232 and 251—against Centripetal,**
                    **Steven Rogers, and Jonathan Rogers)**
16

17        276.    Richards realleges and incorporates by reference the allegations set forth in each of

18   the preceding paragraphs as though fully set forth herein.

19        277.    Defendants Centripetal, Steven Rogers, and Jonathan Rogers failed to provide

20   effective or legally sufficient notice of the merger transaction.

21        278.    Defendants ███████████████████████████████████████████████████

22   Annexes and disclosure schedules for the merger agreement itself—documents Richards still has

23   never seen.  Defendants also failed to properly create a record that may be retained, retrieved and

24   reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a

25   recipient through an automated process, as required by Delaware General Corporations Law Section

26   232.

27        279.    Moreover, DGCL Section 251(c) requires Centripetal (or CNI Holdings) to file either

28   a copy of the merger agreement or a Certificate of Merger with the Delaware Secretary of State.  If

                                   53

LEWIS +
LLEWELLYN
LLP

Centripetal filed a Certificate of Merger (as Richards is informed it did), that certificate must include an undertaking (which Richards is informed it does) "[t]hat a copy of the agreement of consolidation or merger will be furnished by the surviving or resulting corporation, on request and without cost, to any stockholder of any constituent corporation."

280.     Centripetal has intransigently refused to provide Richards with such a copy, in violation of its obligations under Delaware law.

281.     ████████████████████████████████
████████████████████████████
████████████████████████████████████
████████████████████████████████
████████████████████████████████
██████████████████████████
████████████████████████████████████
████████████████████████████████
████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████
████████████████████████████████
████████████████████████████████████
██████████████████████████████████
██████████████████████████████
████

282.     Richards has suffered harm as a direct result of these violations.

283.     Because the Merger Agreement fails to comply with Delaware law, it is null and void.

284.     Richards has no adequate remedy at law.

/ /

LEWIS +
LLEWELLYN

1

**PRAYER FOR RELIEF**

2      WHEREFORE, Richards prays for relief as set forth below:

3      1.      Declare that the Defendants violated the law;

4      2.      Declare that the Merger and Merger Agreement is null and void, and require

5 Defendants to disgorge any benefits received in connection with the merger and restore to Richards

6 the rights, preferences, privileges, and other benefits or Series A-2 Preferred Stock that were

7 extinguished by the merger;

8      3.      Award Richards such monetary and equitable relief against Defendants for their

9 violations of law and breaches of fiduciary duty, and for the lack of entire fairness of the merger

10 transaction, as the Court deems just and equitable;

11      4.      In the alternative, enter a quasi-appraisal monetary judgment with interest against

12 Defendants and in favor of Richards in at least the amount of the difference between the merger

13 consideration and Centripetal's fair value at the time of the merger;

14      5.      Award fees, expenses and costs to Plaintiff and Plaintiff's counsel; and

15      6.      Grant such other and further relief as the Court deems just and proper.

16 Dated:  August 16, 2024          LEWIS & LLEWELLYN LLP

17                                 *s/ Kenneth M. Walczak*

18                          By:   Marc R. Lewis
19                                Kenneth M. Walczak
                                  Peter C. Squeri
20                                Daniel Jordan

21                                Attorneys for Plaintiff Albert Richards

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01065-HSG